No. 24-2466 and No. 24-2704

_____

# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

_____

MARSHA SMITHERMAN,

Plaintiff-Appellant,

v.

MIDLAND CREDIT MANAGEMENT, INC.,

Defendant-Appellee.

_____

BRADLEY BAUER,

Plaintiff-Appellant,

v.

MIDLAND CREDIT MANAGEMENT, INC.,

Defendant-Appellee.

_____

On Appeal from Judgments in the United States District Court
for the Western District of Missouri

_____

## APPELLANTS' CONSOLIDATED BRIEF

_____

David. J. Philipps
Mary E. Philipps
Angie K. Robertson
Philipps & Philipps, Ltd.
9760 South Roberts Road
Suite One
Palos Hills, Illinois 60465
(708) 974-2900
davephilipps@aol.com
mephilipps@aol.com
angie@philippslegal.com

Attorneys for Plaintiffs-Appellants

# SUMMARY OF THE CASE

Appellants Marsha Smitherman ("Smitherman") and Bradley Bauer ("Bauer") brought actions to enforce their rights under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA"), setting forth that Appellee Midland Credit Management, Inc. ("MCM") violated § 1692c(c) of the FDCPA, because MCM ignored their explicit cease contact demands, and instead contacted them by letter. Their Complaints set forth that the letters sent to them were akin to an invasion of privacy, a tort long-recognized at common law, and that they were each forced, as a result of MCM's violation of the law, to take actions to their detriment: they had to expend time, effort, and expense of having their attorney send MCM a letter, re-asserting their cease contact demands.

The district court granted summary judgment to MCM as to both Ms. Smitherman's and Mr. Bauer's Complaints, finding that each Plaintiff lacked Article III standing. Additionally, despite determining that it did not have jurisdiction to hear Appellants' FDCPA claims, the district court nonetheless ruled that MCM's collection communications did not violate the FDCPA.

Ms. Smitherman and Mr. Bauer appeal the district court's rulings as to both Article III standing and whether MCM's actions violated the FDCPA.

Ms. Smitherman and Mr. Bauer respectfully request 25 minutes of oral argument.

# CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No:      **24-2466**

Short Caption:      *Marsha Smitherman v. Midland Credit Management, Inc.*

(1)     The full name of every party that the attorney represents in the case:
Marsha Smitherman.

(2)     The names of all law firms whose partners or associates have appeared for
the party in the case (including proceedings in the district court or before an
administrative agency) or are expected to appear for the party in this court:
Philipps & Philipps, Ltd.; Callahan Law Firm, LLC

(3)     If the party or amicus is a corporation:

(i)      Identify all its parent corporations, if any; and N/A
(ii)     List any publicly held company that owns 10% or more of the party's
or amicus' stock:  N/A

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in
Criminal Cases:     N/A

(5)     Provide Debtor information required by FRAP 26.1(c) 1 & 2:    N/A

Attorney's Signature:      s/David J. Philipps          Date: August 27, 2024

Attorney's Printed Name:       David J. Philipps,
Counsel of Record    [Yes]

Address:     Philipps & Philipps, Ltd.
9760 South Roberts Road
Suite One
Palos Hills, Illinois 60465

Phone Number:     (708) 974-2900          Fax Number: (708) 974-2907

E-Mail Address:     davephilipps@aol.com

ii

# CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No:     **24-2704**

Short Caption:    *Bradley Bauer v. Midland Credit Management, Inc.*

(1)    The full name of every party that the attorney represents in the case:
Bradley Bauer.

(2)    The names of all law firms whose partners or associates have appeared for
the party in the case (including proceedings in the district court or before an
administrative agency) or are expected to appear for the party in this court:
Philipps & Philipps, Ltd.; Callahan Law Firm, LLC

(3)    If the party or amicus is a corporation:

    (i)    Identify all its parent corporations, if any; and N/A
    (ii)    List any publicly held company that owns 10% or more of the party's
    or amicus' stock:  N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in
Criminal Cases:    N/A

(5)    Provide Debtor information required by FRAP 26.1(c) 1 & 2:   N/A

Attorney's Signature:    <u>s/David J. Philipps</u>    Date: August 27, 2024

Attorney's Printed Name:    David J. Philipps,
    Counsel of Record   [Yes]

Address:    Philipps & Philipps, Ltd.
    9760 South Roberts Road
    Suite One
    Palos Hills, Illinois 60465

Phone Number:    (708) 974-2900    Fax Number: (708) 974-2907

E-Mail Address:    davephilipps@aol.com

# TABLE OF CONTENTS

**Page(s):**

SUMMARY OF THE CASE ...................................................................i

CIRCUIT RULE 26.1 DISCLOSURE STATEMENTS ......................................... ii

TABLE OF CONTENTS..........................................................................iv

TABLE OF AUTHORITIES ..................................................................vi

JURISDICTIONAL STATEMENT .......................................................1

STATEMENT OF ISSUES ..................................................................2

STATEMENT OF THE CASE.................................................................2

SUMMARY OF ARGUMENT .............................................................12

ARGUMENT ...................................................................................14

STANDARD OF REVIEW .................................................................14

I.    Ms. Smitherman And Mr. Bauer Suffered Both Tangible
And Intangible Injuries-In-Fact Sufficient To Confer
Article III Standing ................................................................14

    A.    The Additional Time, Effort And/Or Out-Of- Pocket
Funds Expended By Ms. Smitherman And Mr. Bauer
To Re-Assert Their FDCPA Rights Are Tangible
Injuries-In-Fact Sufficient To Confer Article III
Standing ................................................................15

    B.    Invasion Of Privacy/Intrusion Upon Seclusion Is Both
The *Kind* Of Violation Recognized At Common Law
And The *Kind* Of Intangible Harm Recognized By
Congress When It Enacted The FDCPA ..................................23

II.  MCM's Collection Actions Violated § 1692c(c) Of
     The FDCPA ....................................................................... 30

     A.  Section 1692c(c) Of The FDCPA Requires A Debt
         Collector To Cease Contact If The Consumer Tells
         The Debt Collector To Do So In Writing ................................ 31

     B.  Neither Ms. Smitherman Nor Mr. Bauer "Invited"
         MCM To Confirm The Amount Of The Debt, Nor
         Did They Otherwise Waive Their Rights Under
         § 1692c(c) Of The FDCPA ................................................ 33

CONCLUSION ................................................................................ 37

CERTIFICATE OF COMPLIANCE ................................................... 38

CERTIFICATE OF SERVICE ......................................................... 39

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*Acheson Hotels, LLC v. Laufer*, 601 U.S. 1,
144 S.Ct. 18, 217 L.Ed.2d 155 (2023) ....................................15

*Alcarez, et al. v. Akorn, Inc.*, 99 F.4th 368 (7th Cir. 2024) ....................................12

*Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) ........................21

*Barke v. Banks*, 25 F.4th 714 (9th Cir. 2021) ............................................30

*Bassett v. Credit Bureau Services, Inc.*,
60 F. 4th 1132 (8th Cir. 2023) ..........................................14, 30

*Brown v. CACH,* 94 F.4th 665 (7th Cir. 2024) ....................................21

*Bucholz v. Meyer Njus Tanick, PA*, 946 F.3d 855 (6th Cir. 2020) ........................18

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398,
133 S.Ct. 1138, 185 L.Ed.2d 264 (2013) ..........................................17, 18

*Clark v. Capital Credit & Collection Servs., Inc.*,
460 F.3d 1162 (9th Cir. 2006) ....................................34, 35, 36

*Craftwood II, Inc. v. Generac Power Systems*,
920 F.3d 479 (7th Cir. 2019) ..................................................19

*Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451,
137 S.Ct. 973, 197 L.Ed.2 398 (2017) ..................................................20

*Dalton v. NPC Int'l, Inc.*, 932 F.3d 693 (8th Cir. 2019)........................................14

*Demarais v. Gurstel Chargo, P.A.*,
869 F.3d 685 (8th Cir. 2017) ....................................2, 8, 12, 15, 21, 22

*Denmon v. Kansas Couns., Inc.*,
661 F.Supp. 3d 914 (W.D.Mo. 2023) ....................................25, 32, 33

vi

*Dieffenbach v. Barnes & Noble,* 887 F.3d 826 (7th Cir. 2018) ...............................21

*Duarte v. Midland Funding,*
2019 U.S.Dist.LEXIS 319983 (N.D.Ill. 2019) ...........................................34, 35, 36

*Ewing v. Med-1 Solutions,* 24 F.4th 1146 (7th Cir. 2022) ....................................27

*Gadelhak v. AT&T Servs.,* 950 F.3d 458 (7th Cir. 2020) ................2, 13, 26, 27, 28

*Goldberg v. Frerichs,* 912 F.3d 1009 (7th Cir. 2019)..............................................21

*Harper v. Virginia Bd. Of Elections,* 383 U.S. 663,
86 S.Ct. 1079, 16 L.Ed.2d 169 (1966).....................................................................21

*Heinz v. Carrington Mortg. Servs., LLC,* 3 F. 4th 1107 (8th Cir. 2021) ................14

*Hekel v. Hunter Warfiled, Inc.,* 118 F. 4th 938 (8th Cir. 2024)........................15, 16

*Henson v. Santander Consumer USA Inc.,* 582 U.S. 79,
137 S. Ct. 1718, 198 L. Ed. 2d 177 (2017) .............................................................22

*In re: Mack,* 2024 U.S.App.LEXIS 28658 (7th Cir. 2024) ...................................16

*Lewert v. P.F. Chang's China Bistro,* 819 F.3d 963 (7th Cir. 2016)........................21

*Lupia v. Medicredit,* 8 F.4th 1184 (10th Cir. 2021) ...................2, 13, 20, 25, 27, 28

*Mack v. Resurgent Capital Services, L.P.,*
70 F.4th 395 (7th Cir. 2023) ............................................... 2, 12, 15, 16, 19, 20, 22

*McGowan v. Maryland,* 366 U.S. 420,
81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).......................................................................21

*Ojogwu v. Rodenburg Law Firm,* 26 F.4th 457 (8th Cir. 2022).................27, 28, 29

*Pace v. Portfolio Recovery Assocs.,*
512 Fed. Appx. 643 (8th Cir. 2013)..........................................................................32

*Persinger v. Southwest Credit Sys.,* 20 F.4th 1184 (7th Cir. 2021)..................25, 27

vii

*Remijas v. Neiman Marcus Group*, 794 F.3d 688 (7th Cir. 2015) ...........................21

*Scheffler v. Gurstel Chargo, P.A.*, 902 F.3d 757 (8th Cir. 2018) ...........................34

*Spokeo, Inc. v. Robins*, 578 U.S. 330,
136 S.Ct. 1540, 194 L.Ed.2d 635 (2016).................................. 14, 15, 21, 23, 26, 27

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83,
118 S.Ct. 1003, 140 L.Ed. 2d 210 (1998)...............................................30

*Stout v. Equicredit Corporation of America*,
No. 16-5673 2017 WL 9473120 (6th Cir. 2017) .....................................34

*TransUnion v. Ramirez*, 594 U.S. 413,
141 S.Ct. 2190, 210 L.Ed.2d 568 (2021)........................................14, 15, 16, 23, 27

*United States v. SCRAP*, 412 U.S. 669,
93 S.Ct. 2405, 37 L.Ed. 2d 254 (1973) ...............................................12, 19, 20 , 21

*Walters v. Fast AC, LLC*, 60 F.4th 642 (11th Cir. 2023)........................... 12, 15, 22

*Ward v. NPAS*, 63 F.4th 576 (6th Cir. 2023)..........................................27

## Rules:

Fed.R.Civ.P. Rule 23(f) ................................................................. 16

Fed.R.App.P. Rule 4 ..................................................................... 1

Fed.R.App.P. Rule 32 ................................................................. 38

8th Circuit Rule 28A(h) ............................................................. 38

## Statutes:

28 U.S.C. § 1291 ......................................................................... 1

28 U.S.C. § 1331 ......................................................................... 1

28 U.S.C. §2107(a) ...............................................................................1

Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*
    15 U.S.C. §1692(a)-(e) ...........................................8, 22, 24, 31
    15 U.S.C. §1692c .................................................................*passim*
    15 U.S.C. §1692e ............................................................................28
    15 U.S.C. §1692g ........................................................................5, 8
    15 U.S.C. §1692k .............................................................................1

Foreign Service Intelligence Act, 50 U.S.C. § 1881(a) ...........................18

Telephone Consumer Protection Act, 47 U.S.C. § 227 ...........................26

## Other:

U.S. CONST. art. III, § 2 ...............................................................*passim*

Restatement (Second) of Torts, § 652 (1977)..........................................29

# JURISDICTIONAL STATEMENT

The District Court had jurisdiction over both of these cases pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331. On June 14, 2024, the District Cort entered an Order granting MCM's motion for summary judgment as to Ms. Smitherman's claims against it and denying her motion for summary judgment (App. 227-235; S. R.Doc. 33; Add. 01-09);[1] judgment was entered in favor of MCM on June 17, 2024 (App. 236; S. R.Doc. 34).  Ms. Smitherman timely filed her notice of appeal on July 17, 2024. (S. R.Doc. 35).

On July 23, 2024, the District Court entered an Order granting MCM's motion for summary judgment as to Mr. Bauer's claims against it and denying his motion for summary judgment (App. 426-434; B. R.Doc. 35; Add. 10-18); judgment was entered in favor of MCM on July 26, 2024 (App. 435; B. R.Doc. 36). Mr. Bauer timely filed his notice of appeal on August 21, 2024. (B. R.Doc. 37).

As to both, matters, this Court's jurisdiction is based on 28 U.S.C. § 1291, *see*, 28 U.S.C. §2107(a); Fed.R.App.P. Rule 4(a)(1)(A).

---

1.  References to "App. ____" refer to the Joint Appendix filed in this matter; references to "S. R.Doc. ___" refer to the District Court record in *Smitherman*, while references to "B. R.Doc. ___" refer to the District Court record in *Bauer*; references to "Add. ___" refer to Appellant's Addendum.

## STATEMENT OF THE ISSUE

Whether the District Court erred when it found that Ms. Smitherman and Mr. Bauer each failed to establish that they had suffered tangible and intangible injuries-in-fact, and thus did not have Article III standing to bring their claims: that MCM had violated §1692c(c) of the FDCPA when it contacted each of them, by letter, with respect to the debts, after they had each notified MCM, in writing, that they disputed the debts, and had invoked their rights to have MCM stop contacting them.

Whether the District Court erred when it found that MCM's "response" letters did not violate § 1692c of the FDCPA.

**Most Apposite Cases:**

*Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685 (8th Cir. 2017);

*Mack v. Resurgent Capital Services, L.P.*, 70 F.4th 395 (7th Cir. 2023);

*Lupia v. Medicredit*, 8 F.4th 1184 (10th Cir. 2021); and

*Gadelhak v. AT&T Servs.*, 950 F.3d 458 (7th Cir. 2020).

## STATEMENT OF THE CASE

**Marsha Smitherman**

Marsha Smitherman ("Smitherman") is a citizen of the State of Missouri, who allegedly owed consumer debts for two Comenity Bank credit card accounts (for clothing retailers) and a Credit One Bank credit card account. (App. at 122; S.

R.Doc. 28 at p. 2, ¶ 1). Due to financial difficulties, Ms. Smitherman was unable to pay these debts. (App. at 122; S. R.Doc. 28 at p. 2, ¶ 3). Sometime after these debts went into default, they were purchased/obtained by Midland Credit Management, Inc. ("MCM"), which attempted to collect the debts from Ms. Smitherman via, among other means, negative credit reporting. (App. at 122; S. R.Doc. 28 at p. 2, ¶ 4).

MCM is a Kansas corporation that acts as a debt collector, as defined by § 1692a of the FDCPA, because it regularly uses the mails and/or the telephone and/or credit reporting to collect, or attempt to collect, defaulted consumer debts that it did not originate; MCM operates a defaulted debt collection business and attempts to collect debts from consumers in the State of Missouri; in fact, Defendant MCM was acting as a debt collector as to the defaulted consumer debt it attempted to collect from Ms. Smitherman. (App. at 122; S. R.Doc. 28 at ¶ 2; *see also,* App. at 011; S. R.Doc. 1-1; App. at 168-169; S. R.Doc. 28-3).

In addition to credit reporting these three debts, MCM also sent Ms. Smitherman form debt collection letters; MCM's initial form collection letters to collect both the Comenity/Woman Within and Comenity/Jessica London debts were sent on or about January 27, 2022, each giving Ms. Smitherman until March 13, 2022 to dispute the debts; while MCM's initial form collection letter to collect the Credit One debt was sent on or about February 1, 2022, giving Ms. Smitherman

until March 18, 2022 to dispute that debt. (App. at 123; S. R.Doc. 28 at p. 3, ¶ 5).

In mid-February, 2023, using the information that she had given him, Ms. Smitherman's attorney drafted letters to be sent on her behalf to MCM related to each of the debts the MCM was credit-reporting, which Ms. Smitherman electronically signed. (App. at 123; S. R.Doc. 28 at p. 3, ¶ 6). Each of the letters sent on Ms. Smitherman's behalf stated:

> **I dispute this debt. Do not contact me about this debt. This is not a request for validation.**

(App. at 123; S. R.Doc. 28 at p. 3, ¶ 7; *see also*, App. at 012-107; S. R.Doc. 1-2). Ms. Smitherman disputed each of the debts because she believed that the amounts of the debts were too high. (App. at 123; S. R. Doc. 28 at p. 3, ¶ 8).

Despite the clear and unambiguous directions in each of Ms. Smitherman's letters, MCM sent Ms. Smitherman letters, dated February 24, 2023, and other materials in large brown envelopes related to the three debts she had disputed; each letter set forth a balance due, stated that MCM was attempting to collect a debt, and stated, wrongly, that Ms. Smitherman had inquired about or requested documentation. (App. at 123-124; S. R.Doc. 28 at pp. 3-4, ¶ 9; *see also*, App. at 018-033; S. R.Doc. 1-3).

As a result of MCM sending Ms. Smitherman collection letters and documentation that she did not request, and contacting her when she explicitly told MCM to stop contacting her, Ms. Smitherman had to take the time, effort, and

expense to send the materials to her attorney, who then sent MCM yet another letter, demanding that MCM cease contacting Ms. Smitherman (App. at 124; S. R.Doc. 28 at p. 4, ¶ 10; *see also*, App. at 034-035; S. R.Doc. 1-4). Moreover, in addition to postage, MCM's collection actions caused Ms. Smitherman aggravation and emotional distress, and lost time from work to deal with MCM's collection actions; Ms. Smitherman testified that MCM's collection communications were upsetting, stating:

> A.     I think that's why my memory of the brown package is so strong. Very – I was upset long term by Midland Credit Management and these were yet another sally in that long process. I found those brown packages upsetting.

(App. at 124; S. R.Doc. 28 at p. 4, ¶ 11). Additionally, Ms. Smitherman testified that her emotional distress manifested itself in such ways as "a loss of sleep, being upset, and lashing out at family as a result of debt collection issues" (*Ibid*).

Section 1692g(b) requires a debt collector to cease collection of a debt and send validation of a debt, if the consumer notifies the debt collector, in writing within thirty (30) days of the receipt of the initial form collection letter, that consumer disputes the debt, or any portion thereof, or requests validation of the debt, *see*, 15 U.S.C. § 1692g. When Ms. Smitherman sent her disputes of the three debts, in mid-February of 2023, the thirty-day period set forth in § 1692g had long since passed. (App. at 124-125; S. R.Doc. 28 at pp. 4-5, ¶ 12).

**Bradley Bauer**

Bradley Bauer ("Bauer") is also citizen of the State of Missouri who allegedly owed a debt for a Capital One Bank credit card account. (App. at 324; B. R.Doc. 29 at p. 2, ¶ 1). Due to financial difficulties, Mr. Bauer was unable to pay this debt. (App. at 324; B. R.Doc. 29 at p. 2, ¶ 3). Sometime after the Capital One debt went into default, it was purchased/obtained by MCM, which attempted to collect the debt from Mr. Bauer via, among other means, negative credit reporting. (App. at 324; B. R.Doc. 29 a p. 2, ¶ 4). Just as with Ms. Smitherman, MCM was acting as a debt collector as to the defaulted consumer debt it attempted to collect from Mr. Bauer (*supra*. at p. 3; App. at 247; B. R.Doc 1-1; App. at 324; B. R.Doc. 29 at p. 2 ¶ 2; App. at 366-367; B. R.Doc. 29-3).

In addition to credit reporting the debt at issue here, MCM also called Mr. Bauer and sent him form debt collection letters; MCM's initial form collection letter to collect the Capital One Bank debt was dated March 1, 2021. (App. at 324-325; B. R.Doc. 29 at pp. 2-3, ¶ 5).

In April of 2023, Mr. Bauer's attorney drafted, in Mr. Bauer's presence, a letter to be sent on his behalf to MCM related to the Capital One Bank debt that MCM was credit-reporting, which Mr. Bauer then signed. (App. at 325; B. R.Doc. 29 at p. 3, ¶ 6). The letter sent to MCM on Mr. Bauer's behalf stated:

**I dispute that I owe you this. Do not contact me.**

(App. at 325; B. R.Doc. 29 at p. 3, ¶ 7; *see also*, App. at 248-249; B. R.Doc. 1-2).

Mr. Bauer disputed the Capital One Bank debt because he did not believe, or was unsure, that he owed *any* debt to Capital One Bank. (App. at 325; B. R.Doc. 29 at p. 3, ¶ 9).

Despite the clear and unambiguous directions in Mr. Bauer's letter, MCM sent Mr. Bauer a letter, dated May 3, 2023, which set forth a balance due, stated that MCM was attempting to collect a debt, and stated, wrongly, that Mr. Bauer had inquired about or requested documentation. (App. at 325; B. R.Doc. 29 at p. 3, ¶ 9; *see also*, App. at 250-251; B. R.Doc. 1-3).

As a result of MCM sending Mr. Bauer the collection letter and documentation that he did not request, and contacting him when he explicitly told MCM to stop contacting him, Mr. Bauer had to take the time, effort, and expense to send the materials to his attorney, and have his attorney send a letter, re-asserting his right to have MCM stop contacting him. (App. at 325; B. R.Doc. 29 at p. 3, ¶ 10; *see also*, App. at 252-253; B. R.Doc. 1-4).

Moreover, in addition to postage, MCM's collection actions caused Mr. Bauer to be very upset; Mr. Bauer testified that MCM's collection communications were very upsetting:

> Q.     All right. When you opened and reviewed this letter, did you experience any anxiety or emotional distress?
> A.     Yes. I was very upset because I had already asked for them to stop communication and they didn't.

7

> Q.     Did you have any greater or more anxiety or emotional distress than any other debt collection letter that you had received from Midland Credit or any other debt collector?
> A.     Yes.
> Q.     And why was that?
> A.     Because I had contacted them and asked them not to contact me, so it was disturbing that they did anyways.

(App. at 325-326; B. R.Doc. 29 at pp. 3-4, ¶ 11). Mr. Bauer also testified that he felt "hunted" by MCM and that the relief he had experienced after sending his no contact letter was destroyed. (*Ibid.*). Additionally, Mr. Bauer testified that his emotional distress manifested itself in such ways as "a loss of sleep, being upset, and arguing with family members" as a result of debt collection issues. (*Ibid.*)

As with Ms. Smitherman, *supra.* at p. 5, when Mr. Bauer sent his dispute of the Capital One Bank debt, in April of 2023, the thirty-day period set forth in § 1692g had long since passed. (App. at p. 326; B. R.Doc. 29 at p. 4, ¶ 12).

**The Law**

In enacting the FDCPA, Congress expressly set forth that the statute was intended to prevent "abusive practices":

> There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to **invasions of individual privacy**.

*See*, 15 U.S.C. §1692(a)(Abusive Practices)(emphasis added); *see also*, *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 699 (8th Cir. 2017).

To achieve those ends, §1692c of the FDCPA limits the manner in which debt collectors may communicate with consumers. Specifically, §1692c(c) of the FDCPA prohibits a debt collector from communicating with a consumer if the consumer has "notified a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer", *see*, 15 U.S.C. § 1692c(c).

MCM's collection actions alarmed, confused, and emotionally distressed both Ms. Smitherman and Mr. Bauer, which caused each of them to lose sleep, to be worried, and to be considerably upset. (App. at 124 S. R.Doc. 28 at p. 4, ¶ 11; App at 325-326; B. R.Doc. 29 at pp. 3-4, ¶ 11). MCM's improper collection actions violated Ms. Smitherman's and Mr. Bauer's legally-protected right to privacy and intruded upon their seclusion, *see*, 15 U.S.C. § 1692c. (App. at 008-009; S. R.Doc. 1 at pp. 3-4, ¶¶ 12-18; App. at 244-245; B. R.Doc. 1 at pp. 3-4, ¶¶ 12-18).

Moreover, MCM's collection actions caused both Ms. Smitherman and Mr. Bauer to spend the time, effort and expense to have their attorney send MCM letters, re-asserting their rights to have MCM cease contacting them. (App. at 124; S. R.Doc. 28 at p. 4, ¶ 10; *see also*, App. at 034-035; S. R.Doc. 1-4; App. at 325; B. R.Doc. 29 at p. 3, ¶ 10; *see also*, App. at 252-253; B. R.Doc. 1-4).

**Procedural History**

   **Ms. Smitherman:**

   Ms. Smitherman filed her Complaint on March 3, 2023, setting forth that MCM's collection actions violated § 1692c(c) of the FDCPA. (App. at 006-037; S. R.Doc. 1). MCM answered the Complaint on April 28, 2023 (App. at 038-042; S. R.Doc. 11) and the parties conducted discovery (S. R.Doc. 20, 21, 24, 25). On March 29, 2024, the parties then cross-moved for summary judgment (App. at 043 -226; S. R.Doc. 26, 27, 28, 31, 32).

   On June 14, 2024, the district court granted MCM's motion for summary judgment and denied Ms. Smitherman's motion for summary judgment, finding that Ms. Smitherman lacked Article III standing. (App. at 233: S. R.Doc. 33 at p. 7; Add. 07). The district court discounted Ms. Smitherman's time, effort and expenses incurred as an attempt to "manufacture" standing, and found that the letters were "entirely unnecessary" because MCM's response letters were not attempts to collect the debt. (App. at 231-233; S. R.Doc. 33 at pp. 5-7; Add. 05-07). The district court also distinguished other cases finding standing based on an invasion of privacy/intrusion upon seclusion claim as a result of post-cease contact collection attempts, because the district court believed that the letters were ". . . clearly intended to clarify the amount owed after Plaintiff disputed the debt amount." (App. at 233; S. R.Doc. 33 at p. 7; Add. at 07). Finally, the district  court,

despite finding that Ms. Smitherman lacked standing to bring her FDCPA claims (and thus, the district court lacked jurisdiction to rule on anything), granted MCM summary judgment on the merits, finding that MCM's response letters did not violate the FDCPA, because, by disputing the debt, Ms. Smitherman "invited" MCM to "confirm the amount owed". (App. at 233-235; S. R.Doc. 33 at pp. 7-9; Add. at 07-09). Judgment was entered in this matter on June 17, 2024 (App. at 236; S. R.Doc. 34).

Ms. Smitherman filed her Notice of Appeal on July 16, 2024. (S. R.Doc. 35).

**Mr. Bauer:**

Mr. Bauer filed his Complaint on June 1, 2023, setting forth that MCM's collection actions violated § 1692c(c) of the FDCPA. (App. at 242-255; B. R.Doc. 1). MCM answered the Complaint on July 12, 2023 (App. at 256-260; S. R.Doc. 12) and the parties conducted discovery (B. R.Doc. 20, 22, 25, 25). On March 29, 2024, MCM moved for summary judgment and Mr. Bauer cross-moved for summary judgment on April 1, 2024 (App. at 261-424; B. R.Doc. 27, 28, 29, 32, 33). On June 18, 2024, after the motions were fully briefed, the matter -- which had been pending before the Honorable Judge Howard F. Sachs – was transferred to the Honorable Judge Greg Kays (App. at 425; B. R.Doc. 34), who had just entered the Order in *Smitherman* granting MCM summary judgment in that case.

On July 23, 2024, the district court granted MCM's motion for summary judgment and denied Mr. Bauer's motion for summary judgment, entering an order that was substantially identical to the Order in *Smitherman*. (App. at 430-434; B. R. Doc. 35 at p. 5-9; Add. at 14-18). Judgment was entered in this matter on July 26, 2024 (App. at 435; B. R.Doc. 36).

Mr. Bauer filed his Notice of Appeal on August 21, 2024. (B. R.Doc. 37). On August 23, 2024, this Court consolidated these two matters for appeal.

## SUMMARY OF ARGUMENT

The District Court erred in finding that Ms. Smitherman and Mr. Bauer lacked Article III standing to bring their FDCPA claims: Ms. Smitherman and Mr. Bauer each suffered both tangible and intangible injuries-in-fact when MCM ignored their refusals to pay/demands to cease contact, and sent each subsequent collection letters. The time, effort and/or out-of-pocket expenses associated with ***re-asserting*** one's rights under the FDCPA after the initial assertion of one's FDCPA rights, regardless of the modest dollar amount spent, are sufficient to establish Article III standing, *see*, *Demarais*, 869 F.3d at 692-93; *Mack v. Resurgent Capital Services, L.P.*, 70 F.4th 395, 406-407 (7th Cir. 2023); and *Walters v. Fast AC, LLC*, 60 F.4th 642, 649 (11th Cir. 2023); *see also*, *Alcarez, et al. v. Akorn, Inc.*, 99 F.4th 368, 374 (7th Cir. 2024), *citing*, *United States v. SCRAP*, 412 U.S. 669, 688-90, 93 S.Ct. 2405, 37 L.Ed. 2d 254 & n.14 (1973).

Moreover, MCM's collection actions – sending Ms. Smitherman and Mr. Bauer each collection letters after they had demanded that MCM cease contacting them – invaded their privacy and intruded upon their seclusion. Invasion of privacy/intrusion upon seclusion is the kind of harm, recognized at common law, that Congress intended to prevent when it promulgated § 1692c(c) of the FDCPA, *see*, *Lupia v. Medicredit*, 8 F.4th 1184, 1192 (10th Cir. 2021); and *Gadelhak v. AT&T Servs.*, 950 F.3d 458, 462-63 (7th Cir. 2020) (Barrett, J.), *cert. denied*, 141 S. Ct. 2552 (2021).

Finally, the District Court erred when it improperly found that MCM's "response" letters did not violate § 1692c of the FDCPA. The District Court, having found that both Ms. Smitherman and Mr. Bauer lacked Article III standing, did not have jurisdiction to rule on their FDCPA claims. Additionally, MCM's response letters did not fall into any of § 1692c of the FDCPA's exceptions to the prohibition against contacting a consumer who has demanded that contact cease, *see*, 15 U.S.C. § 1692c(c)(1)-(3), nor did Ms. Smitherman and Mr. Bauer, by stating that they disputed the debts, somehow invite MCM to contact them to clarify the amount of the debt, or otherwise "waive" their rights, under § 1692c of the FDCPA, to be left alone.

# ARGUMENT

## STANDARD OF REVIEW

The Court reviews standing *de novo*, *see, Bassett v. Credit Bureau Servs*., 60 F.4th 1132, 1134 (8th Cir. 2023); *Dalton v. NPC Int'l, Inc.*, 932 F.3d 693, 695 (8th Cir. 2019). The Court reviews a grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the non-moving party, *Heinz v. Carrington Mortg. Servs., LLC,* 3 F. 4th 1107, 1111 (8th Cir. 2021).

## I.    Ms. Smitherman And Mr. Bauer Suffered Both Tangible And Intangible Injuries-In-Fact Sufficient To Confer Article III Standing

Article III standing consists of three elements: (1) the plaintiff must have suffered an injury in fact, (2) the injury must be fairly traceable to the challenged conduct of the defendant, and, (3) the injury is likely to be redressed by a favorable judicial decision, *see*, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016); *see also*, *Bassett*, 60 F.4th at 1134. Indeed, as the U.S. Supreme Court has noted:

> As *Spokeo* explained, certain harms readily qualify as concrete injuries under Article III. The most obvious are traditional harms, such as physical harms and monetary harms. If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III.

*TransUnion v. Ramirez*,  594 U.S. 413, 425, 141 S.Ct. 2190, 210 L.Ed.2d 568 (2021). As this Court recently noted, a concrete injury-in-fact cannot be an abstract violation lacking an actual impact: "[To put it in 'more pedestrian terms' . . .

standing asks 'What's it to you?', *see*, *Hekel v. Hunter Warfiled, Inc.*, 118 F. 4th 938, 942 (8th Cir. 2024), *citing*, *Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 12, 144 S.Ct. 18, 217 L.Ed.2d 155 (2023)(Thomas, J. concurring).

A plaintiff's claimed harm is also sufficient for purposes of Article III standing when the harm at issue is closely related to a common law cause of action, *see*, *TransUnion*, 141 S. Ct. 2190 at 2204 (the Article III standing inquiry "asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury. *Spokeo* does not require an exact duplicate in American history and tradition.", *citing*, *Spokeo*, 578 U.S. at 342).

**A. The Additional Time, Effort And/Or Out-Of- Pocket Funds Expended By Ms. Smitherman And Mr. Bauer To Re-Assert Their FDCPA Rights Are Tangible Injuries-In-Fact Sufficient To Confer Article III Standing**

Appellate courts have held that the time, effort and/or out-of-pocket expense associated with re-asserting one's rights under the FDCPA after the initial assertion of one's FDCPA rights, regardless of the modest dollar amount spent, are sufficient to establish Article III standing, *see*, *e.g.*, *Mack v. Resurgent Capital Services, L.P.*, 70 F.4th 395, 406-407 (7th Cir. 2023) (postage to send a second letter, re-asserting one's FDCPA rights, along with the time and effort to do so, constitute a tangible injury); *Walters v. Fast AC, LLC*, 60 F.4th 642, 649 (11th Cir. 2023)(". . . evidence of lost time, money and peace" are "garden-variety injuries in fact" sufficient for Article III standing); and *Demarais v. Gurstel Chargo, P.A.*,

869 F.3d 685, 692-93 (8th Cir. 2017)(time and money spent in obtaining legal services and responding to discovery requests wrongly sent constituted a tangible injury-in-fact, caused by the collector's insistence that it would proceed to trial regarding a debt that it had no right to collect).

Indeed, in *Hekel*, this Court recently noted that, "Monetary harms 'readily qualify as concrete injuries', *TransUnion*, 594 U.S. at 425", *see*, *Hekel*, 118 F. 4th at 943. And concrete injuries are not limited to monetary harms: in *Mack*, the Seventh Circuit subsequently clarified, in granting the class plaintiff's Fed.R. Civ.P. Rule 23(f) petition for permission to appeal a denial class certification, that it did *not* hold, in *Mack*, 70 F.4th 395 ". . . that monetary harm is the only way to establish standing . . .", *see*, *In re: Mack*, 2024 U.S.App.LEXIS 28658 (7th Cir. 2024). Thus, time and effort spent to re-assert one's FDCPA rights are sufficient on their own.

Both Ms. Smitherman and Mr. Bauer alleged – and testified – that, as a result of MCM's improper collection actions, they each spent time and effort to get the response letters to their attorney, and incurred out-of-pocket expenses, by paying for postage, to send MCM another letter, again demanding that MCM stop contacting them (App. at 008; S. R.Doc. 1 at ¶ 11; App. 034-035; S. R.Doc. 1-4; App. at 124; S. R.Doc. 28 at p. 4, ¶ 10; App. at 244; B. R.Doc. 1 at ¶ 11; App. 252-253; B. R. Doc. 1-4; App. at 325; B. R. Doc. 29 at p. 3, ¶ 10;). The district court

discounted this as an attempt to "manufacture" standing, and found that the letters were "entirely unnecessary" because MCM's response letters were not attempts to collect the debt, and had stated that they would not contact Ms. Smitherman and Mr. Bauer again. (App. at 231; S. R.Doc. 33 at p. 5; Add. at 05; App. at 430; B. R.Doc. 35 at p. 5; Add. at 14).

Despite the district court's conclusion to the contrary, in fact Ms. Smitherman's and Mr. Bauer's second letters were necessary. They had each sent MCM letters demanding that MCM cease contact with them, and MCM responded with demonstrably false letters, claiming that they had both requested verification of the debts, when unequivocally neither of them had done so. How, exactly, would either Ms. Smitherman or Mr. Bauer know that MCM would not continue to contact them regarding the debts? Why would Ms. Smitherman and Mr. Bauer assume that that particular statement in MCM's response letters was true, when MCM had wrongly claimed, in the same letter, that each of them had requested additional information?

The district court's reliance on *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013), to support its conclusion that Ms. Smitherman and Mr. Bauer had "manufactured" standing (App. at 231; S.R.Doc. 33 at p. 5; Add. at 05; App. at 430; B.R.Doc. 35 at p. 5; Add. at 14), is misplaced and thus simply inapposite. *Clapper* involved amendments to the Foreign

Intelligence Surveillance Act of 1978 ("FISA"), which Amnesty International alleged *might* impact their future communications with confidential sources, and thus it had to undertake costly and burdensome measures to protect them. *Clapper*, 568 U.S. at 407. The Court found that it was highly speculative that Amnesty International's communications would be targeted, and that it had no actual knowledge of the government's targeting practices, or whether the government would seek to use the type of surveillance authorized by FISA. *Clapper*, 568 U.S. at 414. The Court thus held that Amnesty International did not have standing by choosing to make expenditures based on hypothetical future harm that is not impending. *Clapper*, 568 U.S. at 416.

Here, there is nothing hypothetical, manufactured, or contrived about Ms. Smitherman's and Mr. Bauer's tangible (and intangible) injuries – MCM *was*, in fact, collecting debts from them, and had already ignored their first demands that it cease contacting them in regards to the debts at issue – sending them letters falsely stating that they had requested verification of the debts (App. at 018-033; S. R.Doc. 1-3; App. at 250-251; B. R.Doc. 1-3).[2]

_____

2. For the same reason, the district court's reliance on *Bucholz v. Meyer Njus Tanick, PA*, 946, F.3d 855, 865 (6th Cir. 2020)(App. at 231; S. R.Doc. 33 at p. 5; Add. at 05; App. at 430; B. R.Doc. 35 at p. 5; Add. at 14) is also misplaced; in *Bucholz*, the Sixth Circuit declined to find standing based on the allegation that the consumer felt "anxiety" about the possibility of a future injury, when no such injury was threatened or impending.

In *Mack*, the Seventh Circuit found a consumer's claims sufficient for Article III standing purposes where she had to take time, effort and/or expense to mail a second dispute letter after a debt buyer responded to her first dispute letter with a letter telling her she needed to dispute her debt in writing again in order to avoid the debt being considered valid.

> The defendants also assert that sending the second letter did not harm Mack in any way because it helped her preserve her rights. But Mack had *already* preserved her rights, and it was only because of the misleading Resurgent Letter that Mack went to the trouble and expense of asserting her rights a second time. This did not benefit Mack in any way as her testimony reveals. Fixing the problem that the Resurgent Letter created caused Mack to again leave her home where she was caring for ill relatives, travel to the library, type and print the letter, go to the post office and again pay to mail the letter to the defendants. That the dollar cost was modest is irrelevant; she was misled to her financial detriment. *Craftwood II*, 920 F.3d at 481 (even when an injury is slight, an "identifiable trifle" suffices to establish standing).

*See*, *Mack*, 70 F.4th at 406-7[3]. Similarly, both Ms. Smitherman and Mr. Bauer spent the time and effort, and incurred expenses, because they had to respond, through their counsel, to MCM's continued collection communications by re-asserting their rights to be left alone, pursuant to §1692c(c) of the FDCPA.

To believe that Ms. Smitherman's and Mr. Bauer's concerns -- that MCM would continue to attempt to collect the debts from them – were unfounded is mere

---

3. *Citing*, *Craftwood II, Inc. v. Generac Power Systems*, 920 F.3d 479, 481 (7th Cir. 2019)(holding that unsolicited faxes are concrete, rather than abstract harms, which are sufficient for Article III standing); *see also*, *SCRAP*, 412 U.S. at 688-90.

speculation which ignores both Ms. Smitherman and Mr. Bauer's actual experiences, as well as the reality of the debt collection process. In any case, both the Seventh Circuit, in *Mack*, and the Tenth Circuit, in *Lupia*, rejected this argument – that more than one collection communication is necessary for Article III standing -- finding that a single violative collection communication is sufficient:

> An argument that the defendant harmed the plaintiff only once is not an argument that the plaintiff was not harmed. There is no discernable limit to the number of times a debt collector could mislead a debtor to her detriment with impunity under that argument.

*Mack*, 70 F.4th at 406; *see also*, *Lupia*, 8 F.4th at 1188 (finding Article III standing for violation of §1692c(c) of the FDCPA where a single phone call with respect to a debt was made after a consumer had demanded that such communications cease).

Indeed, courts have repeatedly held that even small financial losses confer Article III standing, *see*, *e.g.*, *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464. 137 S.Ct. 973, 197 L.Ed.2 398 (2017)("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury'"); *see also*, *SCRAP*, 412 U.S. at 688-90, which found that an "identifiable trifle" suffices for standing, *see*, *SCRAP*, 412 U.S. 689 at fn. 14. In *SCRAP*, the court noted that:

> The Government urges us to limit standing to those who have been "significantly" affected by agency action. But, even if we could begin to define what such a test would mean, we think it fundamentally misconceived. "Injury in fact" reflects the statutory requirement that a person be "adversely affected" or "aggrieved," and it serves to identify a person with a direct stake in the outcome of a litigation -- even though small – from a person with a mere interest in the

problem. We have allowed important interests to be vindicated by
plaintiffs with no more at stake in the outcome of an action that a
fraction of a vote, *see*, *Baker v. Carr*, 369 U.S. 186 [1962]; a $5 fine
and costs, *see*, *McGowan v. Maryland*, 366 U.S. 420 [1961]; and a
$1.50 poll tax, *Harper v. Virginia Bd. Of Elections*, 383 U.S. 663
[1966].

*SCRAP*, 412 U.S. at 689, fn. 14. This holding makes perfect sense; the plain text of

Article III of the U.S. Constitution does not set forth any set dollar threshold.

Thus, courts have found that the small loss caused by the brief inability to

use a credit card after a data breach was held to confer Article III standing in

*Dieffenbach v. Barnes & Noble,* 887 F.3d 826, 828 (7th Cir. 2018); *Lewert v. P.F.*

*Chang's China Bistro,* 819 F.3d 963, 967 (7th Cir. 2016); and *Remijas v. Neiman*

*Marcus Group*, 794 F.3d 688 (7th Cir. 2015)(*Remijas* was cited by this Court in

*Demarais*, 869 F.3d at 698). In *Goldberg v. Frerichs*, 912 F.3d 1009, 1010-12 (7th

Cir. 2019), the Seventh Circuit held that even a few pennies' loss of potential

interest would be sufficient for standing; *see also*, *Brown v. CACH,* 94 F.4th 665,

667 (7th Cir. 2024), *citing*, *Dieffenbach*, 887 F.3d at 828, (a delay in receiving

income is a form of loss.).

In *Demarais*, moreover, this Court analyzed the requirements of *Spokeo* and

concluded that time, energy, and legal costs incurred unnecessarily responding to

an unlawful collection attempt constituted the tangible injury-in-fact necessary for

Article III standing:

> [T]he FDCPA, by its terms, guards against many other harms—the mental distress that can cause "marital instability" and "the loss of jobs," as well as "invasions of individual privacy." [15 U.S.C.] § 1692(a). *See also Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1720, 198 L. Ed. 2d 177 (2017) ("Disruptive dinnertime calls, downright deceit, and more besides drew Congress's eye to the debt collection industry."). The attempted collection of debts not owed harms consumers not just by inducing the payment of false claims. It also forces consumers to spend time and money addressing the false claims—even if they know they do not actually owe the claimed debt. Being subjected to attempts to collect debts one knows he or she does not owe can disrupt marriages, impair performance on the job, and cause public embarrassment—the very harms motivating Congress to pass the FDCPA.

*See*, *Demarais*, 869 F.3d at 699; *see also*, *Mack*, 70 F.4th at 406-407(postage to send a second letter, re-asserting one's FDCPA rights, along with the time and effort to do so, constitute a tangible injury); and *Walters*, 60 F.4th 642 at 649 (". . . evidence of lost time, money and peace" are "garden-variety injuries in fact" sufficient for Article III standing).

Thus the time, effort and/or out-of-pocket expense associated with re-asserting one's rights under the FDCPA after the initial assertion of one's FDCPA rights, regardless of the modest dollar amount spent, are sufficient to establish Article III standing, *see e.g.*, *Demarais*, 869 F.3d at 692-93; *Mack*, 70 F.4th at 406-407; and *Walters*, 60 F.4th 642 at 649.

The collection letters MCM sent to Ms. Smitherman and Mr. Bauer, after they had sent MCM letters demanding that it cease contacting them, caused them each to act to their detriment -- costing them each out-of-pocket expenses, as well

as time and effort.[4] Ms. Smitherman and Mr. Bauer have each experienced a harm that is both concrete (it actually happened) and particularized (it happened to them) as a direct result of MCM's violations of the FDCPA. Thus, they have each suffered a tangible injury.

> **B.    Invasion Of Privacy/Intrusion Upon Seclusion Is Both The *Kind* Of Violation Recognized At Common Law And The *Kind* Of Intangible Harm Recognized By Congress When It Enacted The FDCPA**

In addition to tangible injuries, courts have recognized that intangible injuries can be concrete, and thus sufficient for standing: a plaintiff's claimed intangible harm is sufficient for purposes of standing, pursuant to Article III of the Constitution, when the harm at issue is closely related to a common law cause of action, *see*, *TransUnion*, 594 U.S. at 424-425 (the Article III standing inquiry "asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury. *Spokeo* does not require an exact duplicate in American history and tradition.", *citing*, *Spokeo*, 578 U.S. at 342).

---

4. The assertion of the district court – that MCM's response the letters were not collection letters because they did not demand payment but merely clarified the amounts owed -- to the contrary (App. at 232; S. R.Doc. 33 at p. 6; Add. at 06; App. at 431; B. R. Doc. 35 at p. 6; Add. at 15), MCM's response letters were, in fact collection letters: each set forth a balance due and noted that the letters were an attempt to collect a debt  (App. at 018-033; S. R.Doc. 1-3; App. at 250-251; B. R.Doc. 1-3).

Both Ms. Smitherman and Mr. Bauer set forth that they suffered intangible harm: MCM, by sending them each collection letters, after they had explicitly told it that they refused to pay the debt and wanted MCM to cease contacting them, invaded their privacy and intruded upon their seclusion, *see*, 15 U.S.C. § 1692c. (App. at 008-009; S. R.Doc. 1 at pp. 3-4, ¶¶ 12-18; App. at 244-245; B. R.Doc. 1 at pp. 3-4, ¶¶ 12-18).

When Congress enacted the FDCPA -- which has been effective since 1978 -- it expressly recognized that certain collection tactics contributed "to a number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy", *see*, 15 U.S.C. §1692(a) (Abusive Practices).

To achieve those ends, §1692c of the FDCPA limits the manner in which debt collectors may communicate with consumers: § 1692c(c) of the FDCPA prohibits a debt collector from communicating with a consumer who has "notified a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer", *see*, 15 U.S.C. § 1692c(c). Both Ms. Smitherman and Mr. Bauer did so (App. at 012-017; S. R.Doc. 1-2; App. at 248-249; B. R.Doc. 1-2).

MCM's continued collection actions – sending the response letters, falsely claiming that Ms. Smitherman and Mr. Bauer had inquired about or requested documentation (App. at 018-033; S. R.Doc. 1-3; App. at 250-251; B. R.Doc. 1-3)

24

-- after having been informed, in writing, that it should cease contacting Ms. Smitherman and Mr. Bauer because they each refused to pay the debts MCM was attempting to collect (App. at 012-017; S. R.Doc. 1-2; App. at 248-249; B. R.Doc. 1-2), intruded upon their seclusion, and were a direct invasion of their legally-protected right to be left alone and their right to privacy – rights granted to consumers under the common law and § 1692c of the FDCPA, *see*, *Lupia*, 8 F.4th at 1193; *see also*, *Persinger v. Southwest Credit Sys.*, 20 F.4th 1184 (7th Cir. 2021).

The district court, in its Orders granting MCM summary judgment, distinguished *Lupia* and *Denmon v. Kansas Couns., Inc.*, 661 F.Supp. 3d 914, 917 , reconsideration denied, 2023 U.S.Dist.LEXIS 195667 (W.D.Mo. 2023), noting that in those cases, the debt collectors were still attempting to collect the debts, whereas, the district court believed that here, despite the response letters stating that they were an attempt to collect a debt (and setting forth a balance due), the letters were ". . . clearly intended to clarify the amount owed after Plaintiff disputed the debt amount." (App. at 232-233; S. R.Doc. 33 at pp. 6-7; Add. at 06-07; App. at 242; B.R.Doc. 35 at p. 7; Add. at 16).

Nothing in § 1692c(c) of the FDCPA, however, requires that the prohibited communication be made "in connection with the collection of a debt", *see,* 15 U.S.C. § 1692c(c). While both 15 U.S.C. § 1692c(a) and § 1692c(b) prohibit

certain types of communications made "in connection with the collection of any debt", the plain language of the prohibition of communication with a consumer who has refused to pay a debt or has demanded that further communications cease, as set forth in § 1692c(c) of the FDCPA, has no such requirement: all § 1692c(c) says is that ". . . the debt collector shall not communicate further with the consumer with respect to such debt, …", *see*, 15 U.S.C. § 1692c(c). The district court's reasoning is simply not supported by the statute.

Ms. Smitherman's and Mr. Bauer's FDCPA claims arose as a result of MCM's continued intrusion upon their seclusion *after* they had each asserted their rights to privacy – a right Congress explicitly granted consumers when it enacted the FDCPA.

In *Spokeo*, 578 U.S. at 340-341, the United States Supreme Court directed courts to analogize to harms recognized by the common law and look for a "close relationship" in kind, not degree. For example, in *Gadelhak*, the Seventh Circuit, in reliance upon *Spokeo*, held that the harm caused by receiving an unwanted text message, sent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, bore a close relationship to the tort of "intrusion upon seclusion", because:

> [W]hen *Spokeo* instructs us to analogize to harms recognized by the common law, we are meant to look for a "close relationship" in kind, not degree. *See*, *Spokeo*, 136 S. Ct. at 1549. In other words, while the common law offers guidance, it does not stake out the limits of Congress's power to identify harms deserving a remedy. Congress's power is greater than that: it may "elevat[e] to the status of legally

cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id.* (alteration in original).

*Gadelhak*, 950 F.3d at 462-63.

The Supreme Court cited *Gadelhak* with approval in *TransUnion*, recognizing that a "close relationship" between a common law tort and a statutory cause of action are sufficient for Article III standing, *see*, *TransUnion*, 594 U.S. at 424-425 ("*Spokeo* does not require an exact duplicate in American history and tradition"). Indeed, *Gadelhak's* "kind not degree" analysis for evaluating close relationships between statutory harms and common law analogues has been followed by the Tenth Circuit in *Lupia*, 8 F.4th 1184, 1191-1192; the Seventh Circuit in both *Persinger*, 20 F.4th 1184, 1191-92, and *Ewing v. Med-1 Solutions*, 24 F.4th 1146, 1151 (7th Cir. 2022); the Sixth Circuit in *Ward v. NPAS*, 63 F.4th 576, 580-581 (6th Cir. 2023), and was cited favorably by this Court in *Ojogwu v. Rodenburg Law Firm*, 26 F.4th 457, 463, n. 4 (8th Cir. 2022).

In *Lupia*, the Tenth Circuit found that violations of §1692c of the FDCPA invade a consumer's privacy – even where the collection activity at issue is just one collection communication -- and are sufficiently material for Article III standing, because they are closely related to the tort of invasion of privacy and intrusion upon seclusion:

> This tort [intrusion upon seclusion] imposes liability for intrusions on a plaintiff's privacy, such as when a defendant demands payment of a debt by making repeated telephone calls "with such persistence and

27

frequency as to amount to a course of hounding the plaintiff." Ms. Lupia suffered a similar harm when Medicredit made an unwanted call and left her a voicemail about a debt, despite her having sent written notice disputing the debt and requesting that it cease telephone communications. Thus, Ms. Lupia suffered an injury bearing a "close relationship" to the tort of intrusion upon seclusion. … Though a single phone call may not intrude to the degree required at common law, that phone call poses the same *kind* of harm recognized at common law—an unwanted intrusion into a plaintiff's peace and quiet.

See, *Lupia*, 8 F.4th at 1192; *see also*, *Gadelhak,* 950 F.3d at 462-463 ("The harm posed by unwanted text messages is analogous to that type of intrusive invasion of privacy"; "A few unwanted automated text messages may be too minor an annoyance to be actionable at common law. But such texts nevertheless pose the same *kind* of harm that common law courts recognize—a concrete harm that Congress has chosen to make legally cognizable"). [5]

Indeed, this Court in *Ojogwu,* citing *Lupia* and *Gadelhak*, acknowledged that:

Most circuits to consider the issue have concluded that a consumer debtor has Article III standing to assert an FDCPA claim that a debt collector's harassing calls or letters invaded a privacy interest

---

5. It should be noted that §1692c(c) of the FDCPA is not a "get out of jail free" card; it does not prohibit further collection efforts, or leave debt collectors without any remedies – it just limits the manner in which further collection actions may be made; while §1692c(c) of the FDCPA prohibited MCM from contacting either Ms. Smitherman or Mr. Bauer, it could still mark their credit (although it would have to note that they disputed the debt, *see*, 15 U.S.C. §1692e(8)), or even sue them to collect the debt.

protected by the well-established tort of "intrusion upon seclusion." See Restatement (Second) of Torts § 652B; [citations omitted] We agree that many alleged § 1692c(a)(2) violations will satisfy the Article III requirement of concrete injury in fact; after all, the FDCPA's purpose was "to eliminate abusive debt collection practices."

*Ojogwu*, 26 F.4th at 463, fn. 4.

As a result of MCM's continued collection contacts, Ms. Smitherman suffered aggravation and emotional distress and lost time from work to deal with the matter; she testified that MCM's collection communications were "very upsetting", and were "yet another sally in a long term process", and that her emotional distress manifested itself in such way as "a loss of sleep, being upset, and lashing out at family as a result of debt collection issues" (App. at 124; S. R.Doc. 28 at p. 4, ¶ 11). MCM's collection actions also caused Mr. Bauer to be very upset; Mr. Bauer testified that MCM's collection communications were very upsetting -- that he felt "hunted" by MCM, that the relief he had experienced after sending his no contact letter was destroyed, and that his emotional distress manifested itself in such ways as "a loss of sleep, being upset, and arguing with family members" as a result of debt collection issues (App. at 325-326; B. R.Doc. 29 at pp. 3-4, ¶ 11). MCM's improper collection actions invaded Ms. Smitherman's and Mr. Bauer's legally-protected right to privacy and intruded upon their seclusion, *see*, 15 U.S.C. § 1692c. These are all intangible injuries-in-fact sufficient to support Article III standing.

## II.     MCM's Collection Actions Violated § 1692c(c) Of The FDCPA

Despite the fact that the district court found that Ms. Smitherman and Mr. Bauer did not have Article III standing to bring their FDCPA claims, the district court – which had just decided that it did not have jurisdiction over the matter – then proceeded to grant MCM summary judgment on the merits, finding that MCM's response letters did not violate the FDCPA, because, by disputing the debt, Ms. Smitherman and Mr. Bauer had somehow "invited" MCM to "confirm the amount owed". (App. at 234; S. R.Doc. 33 at p. 8; Add. at 08; App. at 433; B. R.Doc. at p. 8; Add. at 17).

The district court, once it decided that Ms. Smitherman and Mr. Bauer lacked Article III standing, simply no longer had jurisdiction to rule on the merits of their FDCPA claims, *see*, *e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed. 2d 210 (1998)(without jurisdiction, the court cannot proceed at all in any cause; the only function remaining to the court is that of announcing the fact and dismissing the cause); *Bassett*, 60 F.4th at 1138, fn. 3 (without standing, a court does not have jurisdiction to decide any other issue); *Barke v. Banks*, 25 F.4th 714, 721 (9th Cir. 2021)(". . . a court that lacks jurisdiction is 'powerless to reach the merits'").

If this Court should find that Ms. Smitherman and Mr. Bauer do, in fact, have standing to pursue their FDCPA claims in federal court, the district court's

erroneous ruling as to the merits of Ms. Smitherman and Mr. Bauer underlying

FDCPA claims must be addressed.

**A.** **Section 1692c(c) Of The FDCPA Requires A Debt Collector To Cease Contact If The Consumer Tells The Debt Collector To Do So In Writing**

In enacting the FDCPA, Congress expressly set forth that the statute was

intended to prevent "abusive practices", including "invasions of individual

privacy", *see*, 15 U.S.C. §1692(a)(Abusive Practices). To achieve those ends,

§1692c of the FDCPA limits the manner in which debt collectors may

communicate with consumers; specifically §1692c(c) of the FDCPA prohibits a

debt collector from communicating with a consumer if the consumer has "notified

a debt collector in writing that the consumer refuses to pay a debt or that the

consumer wishes the debt collector to cease further communication with the

consumer", *see*, 15 U.S.C. § 1692c(c).

Here, Ms. Smitherman and Mr. Bauer each sent letters to MCM telling it

that they disputed the debts, and that MCM should not contact them; neither Ms.

Smitherman nor Mr. Bauer asked that MCM provide validation of the debt, nor did

they invite MCM to "confirm the amount owed" (App. at 012-017; S. R.Doc. 1-2;

App. at 248-249; B. R.Doc. 1-2). Despite the clear and unambiguous directions set

forth in Ms. Smitherman's and Mr. Bauer's very brief and direct letters, MCM sent

them the response letters and other material concerning the debts they had

disputed; each letter set forth a balance due, stated that it was an attempt to collect a debt, and falsely stated that Ms. Smitherman and Mr. Bauer had inquired about or requested documentation (App. at 018-033; S. R.Doc. 1-3; App. at 250-251; B. R.Doc. 1-3).

As this Court noted in *Pace v. Portfolio Recovery Assocs.*, 512 Fed. Appx. 643, 644-45 (8th Cir. 2013), a plain reading of § 1692c(c) forbids a debt collector from continuing to contact a consumer after the consumer sends a cease contact letter.[6] MCM clearly received both Ms. Smitherman's and Mr. Bauer's dispute/no contact letters, and inexplicably responded to them (App. at 018-033; S. R.Doc. 1-3; App. at 250-251; B. R.Doc. 1-3). By directly communicating with Ms. Smitherman and Mr. Bauer, MCM violated § 1692c(c) of the FDCPA; *see*, *Denmon*, 661 F.Supp. at 920-922 (granting summary judgment pursuant to § 1692c(c) of the FDCPA to a consumer who received a communication from a debt collector after a cease contact demand).[7]

---

6. In *Pace*, this Court found that while the consumer there sent a cease contact letter to the debt collector, the consumer failed to provide evidence that the debt collector had continued to contact him by phone or in writing, *see*, *Pace*, 512 Fed. Appx. at 645.

7. The debt collector in *Denmon* has appealed that decision to this Court (Case No. 23-3612); the appeal has been fully-briefed, but oral argument has not yet been scheduled.

Section 1692c(c) of the FDCPA does contains three exceptions to the

prohibition on continued communications after a consumer demands that collection

communications cease: a collector may continue to contact a consumer:

1) to advise the consumer that the debt collector's further efforts
   are being terminated;
2) to notify the consumer that the debt collector or creditor may
   invoke specified remedies which are ordinarily invoked by
   such debt collector or creditor; or
3) where applicable, to notify the consumer that the debt collector
   or creditor intends to invoke a specified remedy.

*See*, 15 U.S.C. §1692c(c)(1-3). Although MCM's response letters acknowledge

that Ms. Smitherman and Mr. Bauer had previously requested that it not contact

them, the letter does not state that MCM's further efforts are, in fact, being

*terminated*, just that they will not contact him by phone or in writing. (App. at 018-

033; S. R.Doc. 1-3; App. at 250-251; B. R.Doc. 1-3). None of the information

MCM sent to Ms. Smitherman or Mr. Bauer meets the requirements of

§1692c(c)(1-3), *see*, *Denmon*, 661 F.Supp, 3d at 920-922.

**B.    Neither Ms. Smitherman Nor Mr. Bauer "Invited" MCM To
       Confirm The Amount Of The Debt, Nor Did They Otherwise
       Waive Their Rights Under § 1692c(c) Of The FDCPA**

The district court found that MCM's response letters did not violate the

FDCPA, because, by disputing the debt, Ms. Smitherman and Mr. Bauer had

somehow "invited" MCM to "confirm the amount owed" (App. at 234; S. R.Doc.

33 at p. 8; Add. at 08; App. at 433; B. R.Doc. at p. 8; Add. at 17). In so holding,

the district court relied on *Scheffler v. Gurstel Chargo, P.A.*, 902 F.3d 757 (8th Cir. 2018); *Stout v. Equicredit Corporation of America*, No. 16-5673 2017 WL 9473120 (6th Cir. 2017); *Duarte v. Midland Funding*, 2019 U.S.Dist.LEXIS 319983 (N.D.Ill. 2019); and *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162 (9th Cir. 2006) (App. at 234; S. R.Doc. 33 at p. 8; Add. at 08; App. at 433; B. R.Doc. 35 at p. 8; Add. at p. 17), but all these cases are factually distinguishable, and thus inapposite.

In both *Scheffler* and *Clark*, the contact after the cease contact notice was *initiated* by the *consumer*, not the debt collector, *see*, *Scheffler*, 902 F.3d at 760, 763; *Clark*, 460 F.3d at 169-72. In *Stout*, the *pro se* litigants included a request for certain information in their refusal to pay, *see Stout*, 6th Cir. Case No. 16-5673, Order dated April 6, 2017 at pp. 3-4.

In *Duarte*, the basis for the 15 U.S.C. § 1692c(c) claim was a refusal to pay, not an unequivocal demand to cease contact: the consumer's letter in *Duarte* stated: "I was informed that you have this account. I refuse to pay this debt. This account and the amount being reported to me credit report is not accurate", *see*, *Duarte*, 2019 U.S.Dist.LEXIS 319983 at [*3]. In contrast, Ms. Smitherman's letters stated "I dispute this debt. Do not contact me about this debt. This is not a request for validation." (App. at 012, 104, 106; S. R.Doc. 1-2), while Mr. Bauer's letter said: "You are credit reporting that I owe you $1232 for a Capital One debt. I

dispute that I owe you this debt. Do not contact me." (App. at 248; B. R.Doc. 1-2).

Moreover, the court in *Duarte* relied primarily on the Ninth Circuit's decision in *Clark* to conclude that "[E]ven a least sophisticated debtor would recognize that a dispute of a debt requires a response and so waives any directive for the debt to the debt collector to cease communications", *see*, *Duarte*, 2019 U.S.Dist.LEXIS 319983 at [*12]. This is an entirely too broad a reading of *Clark* and ignores a key fact in *Clark*: the consumer there had initiated the post-cease contact communication.[8]

Indeed, the Ninth Circuit in *Clark* first held that a debtor could waive the protections of § 1692c(c) of the FDCPA created by a cease communications directive, but, because the FDCPA is a remedial statute designed to protect the least sophisticated debtor, a "heightened standard of voluntariness is appropriate" to determine whether a consumer has, in fact, waived the protections of § 1692c(c) of the FDCPA and that ". . . a debt collector who has received a cease

---

8. Another problem with the *Duarte* decision is the court's holding that the debt collector's letter did not violate § 1692c(c) of the FDCPA because it was not made in connection with the collection of a debt, but, as noted above, pp. 25-26, *supra*., nothing in § 1692c(c) of the FDCPA requires that the communication be made "in connection with the collection of a debt", *see*, 15 U.S.C. § 1692c(c): while both 15 U.S.C. § 1692c(a) and § 1692c(b) prohibit certain types of communications made "in connection with the collection of any debt", the plain language of the prohibition of communication with a consumer who has refused to pay a debt or has demanded that further communications cease, as set forth in § 1692c(c) of the FDCPA, has no such requirement", *see*, 15 U.S.C. § 1692c(c). *Duarte* reads into § 1692c(c) of the FDCPA a requirement that is simply not there.

communications order from a debtor must not contact the debtor unless it has

received a clear waiver of the order", *see*, *Clark*, 460 F.3d at 1170-72. The *Clark*

court then held:

> Applying our newly articulated waiver standard to the facts before us,
> it is obvious that even the least sophisticated debtor would recognize
> that [the consumer]'s request for information constituted consent for
> [the debt collector's attorney], to return [the consumer]'s telephone
> call in order to provide the specific information she requested. In other
> words, no reasonable trier of fact could conclude that [the consumer]
> did not waive the cease communications directive with respect to [the
> debt collector's attorney].

*Clark*, 460 F.3d at 1172.

The district court's conclusion in *Duarte* -- that a consumer who states that

she disputes a debt has waived her right to cease contact -- is based upon an

entirely too broad reading of *Clark*. *Clark* simply does not support the court's

holding in *Duarte*, nor the district court's holding here. Neither Ms. Smitherman,

nor Mr. Bauer subsequently contacted MCM to ask for information about their

debts, nor did they seek any information, request verification, or seek

documentation in their cease contact letters. Nothing in any of Ms. Smitherman's

or Mr. Bauer's letters indicate that either of them knowingly or voluntarily waived

the protections of § 1692c(c) of the FDCPA. This Court should reject the argument

that, by simply stating that they disputed the debt, that they somehow waived the

clear demand to MCM: "Do not contact me".

## CONCLUSION

For the reasons set forth above, Marsha Smitherman and Bradley Bauer urge this Court to reverse the decisions of the District Court, find that they have Article III standing to pursue their claims under the FDCPA, and that MCM's response letters to them violated § 1692c(c) of the FDCPA.

Date: December 5, 2024

Respectfully submitted,

/s/ David J. Philipps_____
David J. Philipps
Mary E. Philipps
Angie K. Robertson
Philipps & Philipps, Ltd.
9760 South Roberts Road
Suite One
Palos Hills, IL 60465
(708) 974-2900
davephilipps@aol.com
mephilipps@aol.com
angie@philippslegal.com

*Attorneys for Plaintiffs-Appellants*

# CERTIFICATE OF COMPLIANCE

1.      This document complies with the word limit of Fed.R.App. 32(a)(7)(B), because, excluding the parts of the document exempted by Fed.R.App.P. 32(f) this document contains 9,415 words.

2.      This document complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type-style requirements of Fed.R.App.P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word Office 365 in 14-point Times New Roman font.

3.      This document complies with 8th Cir. R. 28A(h) because it has been scanned for viruses and is virus free.

Date: December 5, 2024

/s/ David J. Philipps_____
David J. Philipps
Philipps & Philipps, Ltd.
9760 South Roberts Road
Suite One
Palos Hills, Illinois 60465
(708) 974-2900
davephilipps@aol.com

*Attorneys for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system on December 5, 2024. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Date: December 5, 2024

PHILIPPS & PHILIPPS, LTD.

/s/ David J. Philipps_____
David J. Philipps
Philipps & Philipps, Ltd.
9760 S. Roberts Road
Suite One
Palos Hills, IL 60465
(708) 974-2900
davephilipps@aol.com

*Attorneys for Plaintiffs-Appellants*