# UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

**No. 24-2466**

MARSHA SMITHERMAN, Appellant,

v.

MIDLAND CREDIT MANAGEMENT, INC., a Kansas corporation, Appellee.

---

**No. 24-2704**

BRADLEY BAUER, Appellant,

v.

MIDLAND CREDIT MANAGEMENT, INC. a Kansas corporation, Appellee.

---

On Appeal from Judgments of the United States District Court
for the Western District of Missouri

---

## CONSOLIDATED BRIEF OF APPELLEE

---

Joshua C. Dickinson
Shilee T. Mullin
Attorneys for Appellee
Spencer Fane LLP
13815 FNB Parkway, Suite 200
Omaha, NE 68154
Telephone: (402) 965-8600
Facsimile: (402) 965-8601
E-mail: jdickinson@spencerfane.com
smullin@spencerfane.com

**SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT**

Counsel for Appellants Marsha Smitherman ("Smitherman") and Bradley Bauer ("Bauer") drafted letters to Appellee Midland Credit Management, Inc. ("Midland") under the guise of being from their clients. The letters advised Midland that Smitherman and Bauer disputed their accounts, but also not to contact them. In response, Midland provided Smitherman and Bauer, respectively, with information from the previous creditor verifying the validity of the debts and advised, "as previously requested by you, we will no longer be contacting you regarding this account by phone or in writing . . . ." Based on these benign response letters to their disputes, Smitherman and Bauer then brought suit for a violation of the Fair Debt Collection Practices Act ("FDCPA"), and they claim to be injured.

Midland moved to dismiss the cases for lack of Article III standing and, alternatively, moved for summary judgment, asserting the response letters did not violate the FDCPA. The District Court agreed that Smitherman and Bauer lack standing, as the evidence demonstrated that their injuries were not cognizable and instead were contrived. Furthermore, the District Court determined that even if Smitherman and Bauer had standing, the response letters did not violate the FDCPA because by including the dispute language in their letters, they invited Midland to confirm the amount owed.

Midland respectfully requests 20 minutes of oral argument.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eighth Circuit Court of Appeals Local Rule 26.1A, Appellee Midland Credit Management, Inc. states that it is a wholly-owned subsidiary of Encore Capital Group, Inc., which is a publicly-held corporation.

# TABLE OF CONTENTS

**Page**

SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT ............i

CORPORATE DISCLOSURE STATEMENT ...................................... ii

TABLE OF CONTENTS................................................................. iii

TABLE OF AUTHORITIES ............................................................v

STATEMENT OF ISSUES ............................................................1

STATEMENT OF THE CASE.........................................................3

    I.    Smitherman v. Midland...............................................3

        A.    Smitherman's Complaint And Discovery.................5

        B.    Motions for Summary Judgment and District Court Order........6

    II.    Bauer v. Midland......................................................10

        A.    Bauer's Complaint and Discovery..........................11

        B.    Motions for Summary Judgment and District Court Order......12

SUMMARY OF ARGUMENT ........................................................16

ARGUMENT ............................................................................17

    I.    Standards of Review..................................................17

        A.    Orders Dismissing Cases For Lack Of Article III Standing ...............17

        B.    Orders Granting Summary Judgment For Midland..................17

        C.    Evidentiary Decisions ...........................................18

    II.    The District Court Properly Determined That Smitherman And Bauer Lacked Article III Standing ........................18

        A.    The District Court Correctly Determined That Smitherman And Bauer Failed To Establish An Injury-In-Fact ...............19

            1.    The Postage Stamps.....................................20

                a.    Smitherman .......................................20

                b.    Bauer ...............................................23

            2.    An Unnecessary Postage Stamp Is Not An Injury .........25

| | | | |
|---|---|---|---|
| | 3. | "Time and Effort" | 25 |
| | 4. | Emotional Distress | 29 |
| | 5. | Invasion of Privacy | 31 |
| | | a. | The Response Letters Were Not An Intrusion Into Smitherman and Bauer's Privacy And Seclusion 34 |
| | | b. | Receipt Of The Response Letters Via U.S. Mail in One's Mailbox Would Not Be Highly Offensive To A Reasonable Person | 39 |

B. The District Court's Orders Dismissing Smitherman And Bauer's Complaints For Lack Of Article III Standing Should Be Affirmed Because They Failed To Establish Causation ...... 42

III. The District Court Correctly Determined, In The Alternative, That Smitherman And Bauer Failed To Establish A Violation Of 15 U.S.C. § 1692c(c) ...... 44

A. The District Court's Issuance of An Alternative Decision Was Appropriate ...... 45

B. The District Court's Alternative Decision That Smitherman And Bauer Failed To Establish A Section 1692c(c) Violation Was Correct ...... 46

1. The District Court Properly Determined That Smitherman And Bauer Waived Their Section 1692c(c) Claims ...... 47

2. The District Court's Decision Should Be Affirmed Because The Response Letters Did Not Trigger Section 1692c(c) ...... 49

C. The District Court's Decisions Should Be Affirmed Because The Response Letters Fall Within An Exception To Section 1692c(c) ...... 51

CONCLUSION ...... 52

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aargon Agency, Inc. v. O'Laughlin,*
   70 F.4th 1224 (9th Cir. 2023) ...........................................................49

*Bassett v. Credit Bureau Servs., Inc.,*
   60 F.4th 1132 (8th Cir. 2023) ....................................................*passim*

*Bloom v. Metro Heart Grp. of St. Louis, Inc.,*
   440 F.3d 1025 (8th Cir. 2006) ..........................................................20

*Boring v. Google, Inc.,*
   362 F. App'x 273 (3d Cir. 2010) ......................................................40

*Braitberg v. Charter Communications, Inc.,*
   836 F.3d 925 (8th Cir. 2016) ............................................................34

*Branham v. TrueAccord Corp.,*
   No. 22-00531, 2023 WL 2664010 (N.D. Ill. Mar. 28, 2023) ............................41

*Buchholz v. Meyer Njus Tanick, PA,*
   946 F.3d 855 (6th Cir. 2020) .......................................................29, 31

*Burnikel v. Fong,*
   886 F.3d 706 (8th Cir. 2018) ............................................................18

*Clark v. Capital Credit & Collection Servs., Inc.,*
   460 F.3d 1162 (9th Cir. 2006) ..........................................................49

*Crawford v. L. Offs. of Brett Borland,*
   No. 23-191, 2024 WL 187825 (S.D. Ohio Jan. 12, 2024)................................25

*Demarais v. Gurstel Chargo, P.A.,*
   869 F.3d 685 (8th Cir. 2017) ...............................................26, 27, 35

*Denmon v. Kansas Couns., Inc.,*
   No. 21-00457, 2023 WL 7179809 (W.D. Mo. Nov. 1, 2023)...........................35

*Duarte v. Midland Funding, LLC,*
   No. 17-5061, 2019 WL 978495 (N.D. Ill. Feb. 27, 2019)..........................*passim*

*Ebaugh v. Medicredit, Inc.*,
   No. 23-209, 2023 WL 5289226 (E.D. Mo. Aug. 17, 2023) .................33, 38, 39

*Est. of Barnwell by & through Barnwell v. Watson*,
   880 F.3d 998 (8th Cir. 2018) ...............................................................17

*Ewing v. MED-1 Sols., LLC*,
   24 F.4th 1146 (7th Cir. 2022) .............................................................37

*F.B. v. Our Lady of Lourdes Par. & Sch.*,
   No. 23-3624, 2025 WL 86945 (8th Cir. Jan. 14, 2025) ....................17

*Food & Drug Admin. v. All. for Hippocratic Med.*,
   602 U.S. 367 (2024)......................................................................1, 43

*Freeman v. Ocwen Loan Servicing, LLC*,
   113 F.4th 701 (7th Cir. 2024) .............................................................37

*Fullington v. Pfizer, Inc.*,
   720 F.3d 739 (8th Cir. 2013) ..........................................................1, 42

*Gadelhak v. AT&T Servs., Inc.*,
   950 F.3d 458 (7th Cir. 2020) .............................................................37

*Gburek v. Litton Loan Servicing LP*,
   614 F.3d 380 (7th Cir. 2010) .............................................................49

*Gier By & Through Gier v. Educ. Serv. Unit No. 16*,
   66 F.3d 940 (8th Cir. 1995) ...............................................................18

*Gilbert v. TrueAccord Corp.*,
   608 F. Supp. 3d 656 (N.D. Ill. 2022)............................................28, 29

*Heinz v. Carrington Mortg. Servs., LLC*,
   3 F.4th 1107 (8th Cir. 2021) ..............................................................50

*Hekel v. Hunter Warfield, Inc.*,
   118 F.4th 938 (8th Cir. 2024) .....................................................*passim*

*Hennessey v. Medicredit, Inc.*,
   No. 18-00217, 2018 WL 3546769 (E.D. Mo. July 24, 2018) ......................2, 51

*Idaho Conservation League v. Mumma*,
   956 F.2d 1508 (9th Cir. 1992) ............................................................45

*Iowa League of Cities v. E.P.A.*,
   711 F.3d 844 (8th Cir. 2013), *enforced sub nom. Iowa League of
   Cities v. Env't Prot. Agency*, No. 11-3412, 2021 WL 6102534 (8th
   Cir. Dec. 22, 2021).............................................................................19

*Jasperson v. Purolator Courier Corp.*,
   765 F.2d 736 (8th Cir. 1985) ..............................................................30

*Liberty Mut. Ins. Co. v. Elgin Warehouse & Equip.*,
   4 F.3d 567 (8th Cir. 1993) ..................................................................31

*Lindley v. TRS Recovery Assocs., Inc.*,
   No. 12-109, 2012 WL 6201175 (S.D. Tex. Dec. 12, 2012) ...........2, 50

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)......................................................................22, 29

*Lupia v. Medicredit, Inc.*,
   8 F.4th 1184 (10th Cir. 2021) .............................................................36

*Mack v. Resurgent Cap. Servs., L.P.*,
   70 F.4th 395 (7th Cir. 2023) ...............................................................26

*McIvor v. Credit Control Servs., Inc.*,
   773 F.3d 909 (8th Cir. 2014) ..............................................................49

*Moody v. St. Charles Cnty.*,
   23 F.3d 1410 (8th Cir. 1994) ..............................................................19

*Oglesby v. Lesan*,
   929 F.3d 526 (8th Cir. 2019) ..............................................................18

*Ojogwu v. Rodenburg L. Firm*,
   26 F.4th 457 (8th Cir. 2022) .......................................................*passim*

*Owner-Operator Indep. Drivers Ass'n v. United States Dep't of
   Transportation*,
   878 F.3d 1099 (8th Cir. 2018) ............................................................22

*Pennell v. Glob. Tr. Mgmt., LLC*,
990 F.3d 1041 (7th Cir. 2021) ............................................................31

*Persinger v. Sw. Credit Sys., L.P.*,
20 F.4th 1184 (7th Cir. 2021) ............................................................36

*Peterson v. Experian Info. Sols.*,
44 F.4th 1124 (8th Cir. 2022) ............................................................43

*Pucillo v. Nat'l Credit Sys., Inc.*,
66 F.4th 634 (7th Cir. 2023) .......................................................38, 39

*Rydholm v. Equifax Info. Servs. LLC*,
44 F.4th 1105 (8th Cir. 2022) ............................................................18

*Sallis v. Univ. of Minn.*,
408 F.3d 470 (8th Cir. 2005) ............................................................17

*Santoro v. Tower Health*,
No. 22-4580, 2024 WL 1773371 (E.D. Pa. Apr. 24, 2024),
*reconsideration denied*, No. CV 22-4580, 2024 WL 4771398 (E.D.
Pa. Nov. 13, 2024) ............................................................................40

*Scheffler v. Gurstel Chargo, P.A.*,
902 F.3d 757 (8th Cir. 2018) ........................................................2, 47

*Sharp-Richardson v. Boyds Collection, Ltd.*,
No. 96-0344, 1999 WL 33656875 (N.D. Iowa Sept. 30, 1999) ........40

*Sierra Club v. Robertson*,
28 F.3d 753 (8th Cir. 1994) .........................................................45, 46

*Simpson v. Revco Sols., Inc.*,
No. 22-00483, 2022 WL 17582742 (S.D. Ill. Dec. 12, 2022)............38

*Six v. IQ Data Int'l Inc.*,
673 F. Supp. 3d 1040 (D. Ariz. 2023) ...............................................41

*Smocks v. Preston Heights Apartments*,
No. 22-787, 2024 WL 38284 (E.D. Tex. Jan. 3, 2024) .....................40

*Sofka v. Thal*,
662 S.W.2d 502 (Mo. 1983) ..............................................................40

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) .................................................................18, 42

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) .................................................1, 27, 32, 43

*Tuttle v. Lorillard Tobacco Co.*,
  377 F.3d 917 (8th Cir. 2004) .............................................22

*Villa v. Sw. Credit Sys., L.P.*,
  No. 19-01701, 2021 WL 11617656 (W.D.N.Y. Jan. 29, 2021) ...................2, 47

*Walters v. Fast AC, Ltd. Liab. Co.*,
  60 F.4th 642 (11th Cir. 2023) .............................................28

*Ward v. NPAS, Inc.*,
  63 F.4th 576 (6th Cir. 2023) .............................................36

*Waters v. Madson*,
  921 F.3d 725 (8th Cir. 2019) .............................................30

*Wind River Multiple Use Advocs. v. Espy*,
  85 F.3d 641 (10th Cir. 1996) (unpublished) ................................45, 46

## Statutes

15 U.S.C. § 1692c ..................................................................50, 51

15 U.S.C. § 1692c(c) ..........................................................*passim*

15 U.S.C. § 1692c(c)(1) ........................................................51

15 U.S.C. § 1692c(c)(2) ........................................................52

## Other Authorities

Restatement (Second) of Torts § 652B (1977) .........................33, 34, 35

## Rules

Fed. R. App. P. 28(a) ............................................................30

ix

**Constitutional Provisions**

U.S. Const. art. III .................................................................................*passim*

## STATEMENT OF ISSUES

1.     Did the District Court correctly determine that Smitherman and Bauer failed to meet their burden of proof to demonstrate that they suffered an injury-in-fact for purposes of establishing Article III standing?

**Most Apposite Cases**:

*TransUnion LLC v. Ramirez*, **594 U.S. 413 (2021)**

*Hekel v. Hunter Warfield, Inc.*, **118 F.4th 938, 944 (8th Cir. 2024)**

*Bassett v. Credit Bureau Servs., Inc.*, **60 F.4th 1132, 1135 (8th Cir. 2023)**

*Ojogwu v. Rodenburg L. Firm*, **26 F.4th 457, 462 (8th Cir. 2022)**

2.     Should the District Court's orders dismissing Smitherman and Bauer's Complaints for failure to establish Article III standing be affirmed under the "right for any reason rule" because Smitherman and Bauer failed to establish that any alleged injuries were caused by the letters Midland sent to them?

**Most Apposite Cases**:

*Food & Drug Admin. v. All. for Hippocratic Med.*, **602 U.S. 367, 383 (2024)**

*Fullington v. Pfizer, Inc.*, **720 F.3d 739, 747 (8th Cir. 2013)**

*Ojogwu v. Rodenburg L. Firm*, **26 F.4th 457, 462 (8th Cir. 2022)**

3.     Alternatively:

(a)     Did the District Court correctly determine that Smitherman and Bauer invited a response by disputing the debts in their initial letters to Midland and, thus

1

grant summary judgment for Midland on Smitherman and Bauer's claims that Midland violated 15 U.S.C. § 1692c(c)?

**Most Apposite Cases:**

*Scheffler v. Gurstel Chargo, P.A.*, 902 F.3d 757 (8th Cir. 2018)

*Duarte v. Midland Funding, LLC*, No. 17-5061, 2019 WL 978495, at *4 (N.D. Ill. Feb. 27, 2019)

*Villa v. Sw. Credit Sys., L.P.,* No. 19-01701, 2021 WL 11617656, at *4 (W.D.N.Y. Jan. 29, 2021), *report and recommendation adopted*, No. 19-1701, 2021 WL 1163199 (W.D.N.Y. Mar. 25, 2021)

(b)    Should the District Court's orders granting summary judgment for Midland be affirmed under the "right for any reason rule" because the animating purpose of Midland's response letters was not to collect a debt, or because the response letters fall within an exception to 15 U.S.C. § 1692c(c)?

**Most Apposite Cases:**

*Duarte v. Midland Funding, LLC*, No. 17-5061, 2019 WL 978495, at *4 (N.D. Ill. Feb. 27, 2019)

*Hennessey v. Medicredit, Inc.*, No. 18-00217, 2018 WL 3546769, at *2 (E.D. Mo. July 24, 2018)

*Lindley v. TRS Recovery Assocs., Inc.*, No. 12-109, 2012 WL 6201175, at *4 (S.D. Tex. Dec. 12, 2012)

## STATEMENT OF THE CASE

Despite Smitherman and Bauer's inapposite references to credit reporting (Appellant Br. at 3, 6[1]), these cases do not involve credit reporting. Rather, these cases concern response letters that Midland sent to Smitherman and Bauer on February 24, 2023, and May 3, 2023, respectively (collectively referred to as "Response Letters"). Midland sent Smitherman and Bauer the Response Letters after it received letters from them (actually, the letters were drafted by their counsel but purported to be from Smitherman and Bauer themselves) disputing their accounts. The facts and evidence in both cases is similar but will be separately stated below.

## I.    Smitherman v. Midland

Midland received three letters, which were purportedly mailed on February 15, 2023[2], pertaining to three separate accounts of Smitherman (hereinafter referred to as "February 15 Letters"). The February 15 Letters all stated: "I dispute this debt. Do not contact me about this debt. This is not a request for validation." (App. 012-17; S.R.Doc. 1-2.)

---

[1] The page number references to Appellant's Brief are to the Brief and not the ECF page numbers.

[2] The letters did not contain a date, but Smitherman alleged in her Complaint that Smitherman responded to Midland's prior collection attempts "on February 15, 2023, with letters disputing the debts . . . ." (App. 0007, S.R.Doc. 1 ¶ 8.) "App." refers to the Joint Appendix. "S.R.Doc." or "S.R.Docs." refer to the District Court record in Smitherman.

In response to the February 15 Letters, Midland sent three letters to Smitherman (one letter responding to each of Smitherman's) dated February 24, 2023 (hereinafter "February 24 Response Letters"). (App. 18-33, S.R.Doc. 1-3.) The February 24 Response Letters all advised "[w]e understand that you are inquiring about or requesting documentation about the accuracy of our recordings concerning this account," and provided documents regarding the accounts. (App. 018-33; S.R.Doc. 1-3.) The February 24 Response Letters all concluded by stating:

> For additional information you may contact us online at MidlandCredit.com, you may also call Consumer Resolutions at 877-366-1520.
>
> **In the meantime, as previously requested by you, we will no longer be contacting you regarding this account by phone or in writing unless required by law or you request that we resume collections.**

(App. 018-33, S.R.Doc. 1-3 (emphasis added).)

In fact, after sending the February 24 Response Letters, undisputedly, Midland did not further contact Smitherman about any of the accounts. (App. 070, S.R.Doc. 26-2 at Response No. 2.) Despite this, Smitherman's counsel, in what appears to be a calculated effort to attempt to generate an injury-in-fact, sent a letter to Midland dated March 22, 2023 (hereinafter "March 22 Counsel Letter"), advising Midland to cease further communications with Smitherman on all three accounts and stated that Smitherman was represented by counsel. (App. 034, S.R.Doc. 1-4.) One

day later, on March 23, 2023, Smitherman hurried to Court to file her Complaint against Midland. (App. 006-10; S.R.Doc. 1.)

## A.    Smitherman's Complaint And Discovery

Smitherman's Complaint alleged that Midland violated 15 U.S.C. § 1692c(c) by sending her the February 24 Response Letters. (App. 007-8; S.R.Doc. 1 ¶¶ 8-10.) Regarding alleged injury, Smitherman pled in her Complaint that:

> 11. As a result of Defendant's failure to note that the [sic] Ms. Smitherman demanded that it cease contact with her, she was forced to take action to her detriment, by taking the time and expense of having her attorney send a letter, instructing Defendant to stop contacting her.
> . . .
>
> . . .
>
> 15. Defendant's collection actions alarmed, confused and emotionally distressed Ms. Smitherman, invaded her right to privacy, caused to have to retain counsel to direct MCM to leave her alone and cost her out-of-pocket expense.

(App. 008-9, S.R.Doc. 1 ¶¶ 11, 15.)

Thereafter, the parties engaged in written discovery and Midland took Smitherman's deposition. (App. 070-116, S.R.Docs. 26-2 and 26-3.) The discovery revealed as follows:

- Smitherman's counsel drafted the February 15 Letters, (App. 072, S.R.Doc. 26-2 at Response No. 9; App. 093, S.R.Doc. 26-3 at 35:1-25), despite that they purported to be from Smitherman herself, (App. 012-17, S.R.Doc. 1-2).

- There is no evidence that Smitherman paid for postage for sending Midland's February 24 Response Letters to her counsel, (App. 075, S.R.Doc. 26-2 at Response No. 3), and Smitherman is unsure if she paid

for postage for her counsel mailing the March 22 Counsel Letter, (App. 148, S.R.Doc. 28-1 at 57:5-59:21).

- Smitherman does not recall how long she spent reviewing the February 24 Response Letters, but she "does not recall spending a lot of time on them," (App. 096, S.R.Doc. 23-3 at 45:2-3; App. 096-97, S.R.Doc. 23-3 at 48:16-50:1).

- There is no evidence to support that Smitherman paid for the stamp to mail the March 22 Counsel Letter to Midland, (App. 099, S.R.Doc. 27-3 at 57:8-59:21; App. 075, S.R.Doc. 26-2 at Response No. 3).

- Smitherman has not paid her attorney any money for prosecuting this lawsuit. (App. 098, S.R.Doc. 26-3 at 55:6-24).

## B.    Motions for Summary Judgment and District Court Order

Thereafter, the parties both moved for summary judgment. (App. 043-116, S.R.Docs. 26, 26-1 to 26-3; App. 117-77, S.R.Docs. 27, 28, 28-1 to 28-4.) In Midland's Motion for Summary Judgment, it argued that Smitherman's case should be dismissed because she lacked Article III standing and, alternatively, that judgment should enter for it because Smitherman could not establish a violation of Section 1692c(c). (App. 043-65, S.R.Doc. 26.)

Regarding standing, Midland asserted that Smitherman could not establish a tangible injury-in-fact because the asserted cost of a postage stamp was wholly contrived to manufacture standing. (App. 051-55, S.R.Doc. 26 at 6-10.) As to asserted intangible injuries, Midland argued that receipt of one benign letter via U.S. mail does not even remotely resemble the tort of intrusion upon seclusion. (App. 056, S.R.Doc. 26 at 10-13.) Also, Midland asserted that Smitherman could not

establish that her alleged "injuries" were caused by the February 24 Response Letters, which was also required to establish standing. (App. 059-60, S.R.Doc. 26 at 13-14.)

As to Midland's alternative argument, Midland asserted that judgment should enter for it because: (1) the animating purpose of the February 24 Response Letters was not to collect a debt; (2) by including the dispute in the February 15 Letters, Smitherman waived any claim under Section 1692c(c); and/or (3) the February 24 Response Letters fall within an exception to Section 1692c(c). (App. 060-64, S.R.Doc. 26 at 14-18.)

In Smitherman's Motion for Summary Judgment, she argued that the February 24 Response Letters violated Section 1692c(c) because the February 15 Letters advised Midland not to contact her. (App. 125-27, S.R.Doc. 28 at 5-7.) Smitherman also argued that she had Article III standing, as she suffered both tangible and intangible harms as a result of the February 24 Response Letters. (App. 129, S.R.Doc. 28 at 9.) Regarding tangible harm, Smitherman claimed that she "paid money out of pocket via postage and spent time and effort as a result of MCM's illegal collection actions," and regarding intangible harm, she alleged an invasion of privacy and intrusion upon seclusion, which upset and aggravated her. (App. 118, S.R.Doc. 27 at 2; App. 128-30, S.R.Doc. 28 at 8-12.)

On June 24, 2024, the District Court, viewing all facts in the light most favorable to Smitherman, granted Midland's Motion for Summary Judgment. (App. 227-35, S.R.Doc. 33, Add.[3] 1-9.) First, the District Court determined that Plaintiff did not meet her burden of establishing Article III standing because she did not demonstrate a tangible or intangible injury. (App. 230-33, S.R.Doc. 33 at 5-7, Add. 7-10.)

Regarding the alleged tangible injuries, the District Court determined that Smitherman's testimony regarding the stamp was contradictory, and the Court doubted that Smitherman gave her attorney a pre-stamped envelope. (App. 231, S.R.Doc. 33 at 5, Add. 8.) Regardless, Judge Kays determined that even if Smitherman somehow paid for the stamp for the March 22 Counsel Letter, that letter "was merely an attempt to manufacture standing," because the February 24 Response Letters "specifically indicated Defendant would no longer contact Plaintiff as requested, and Defendant did not contact her thereafter, making the March Letter entirely unnecessary." (App. 231, S.R.Doc. 33 at 5, Add. 8.)

As to the alleged "time and effort" to get the February 24 Response Letters to her attorney, the District Court found this asserted injury insufficient because Smitherman testified that "she did not even really look at the Response Letters when

---

[3] "Add." refers to the Addendum to Appellants' Brief.

she received them," and she had already retained counsel prior to receipt of the letters.  (App. 231, S.R.Doc. 33 at 5, Add. 8.)

Third, as to Smitherman's alleged emotional distress, the District Court determined that it did not amount to a legally cognizable injury and Smitherman's passing reference to missing work was not enough to survive summary judgment.  (App. 232, S.R.Doc. 33 at 6, Add. 9.)

Finally, the District Court rejected Smitherman's argument that the February 24 Response Letters, which did not demand payment, violated her privacy and intruded upon her seclusion.  (App. 232, S.R.Doc. 33 at 6, Add. 9.)  In reaching its conclusion, the District Court determined that the cases Smitherman relied upon were distinguishable because those cases involved situations where the debt collectors were "actively attempting to collect a debt after receiving cease-and-desist letters," unlike this case.  (App. 232-33, S.R.Doc. 3 at 6-7, Add. 9-10.)

Alternatively, the District Court determined that even if Smitherman had standing, her claim failed because the February 24 Response Letters did not violate Section 1692c(c).  (App. 233-35, S.R.Doc. 33 at 7-9, Add. 10-12.)  The trial court found that the claim failed because Smitherman waived her Section 1692c(c) claim with her February 15 Letters disputing her accounts.  (*Id.*)  Regarding Midland's additional arguments for why the February 24 Response Letters did not violate

Section 1692c(c), the District Court stated that it only addressed the waiver argument "because this one argument is dispositive." (App. 233, S.R.Doc. 33 at 7, Add. 10.)

## II. Bauer v. Midland

Midland received a letter, which was purportedly mailed on April 19, 2023[4], signed by Bauer stating: "I dispute that I owe you this debt. Do not contact me," (hereinafter referred to as "April Letter"). (App. 248, B.R.Doc.[5] 1-2.) In response to the April Letter, Midland sent Bauer a letter dated May 3, 2023 (hereinafter "May Response Letter"). (App. 250-51, B.R.Doc. 1-3.) The May Response Letter advised "[w]e understand that you are inquiring about or requesting documentation about the accuracy of our recordings concerning this account," and stated "[w]e have also enclosed documents regarding this account." (App. 250; B.R.Doc. 1-3.) The May Response Letter concluded by stating:

> For additional information you may contact us online at MidlandCredit.com, you may also call Consumer Resolutions at 877-366-1520.
>
> **In the meantime, as previously requested by you, we will no longer be contacting you regarding this account by phone or in writing unless required by law or you request that we resume collections.**

(*Id.* (emphasis added).)

---

[4] The letter did not contain a date, but Bauer alleged in his Complaint that he responded to Midland's prior collection attempts "on April 19, 2023 with a letter disputing the debt . . . ." (App. 243, B.R.Doc. 1 ¶ 8.)

[5] "B.R.Doc." or "B.R.Docs." refer to the District Court record in Bauer.

In fact, after sending the May Response Letter, undisputedly, Midland did not further contact Bauer about the account. (App. 288, B.R.Doc. 27-2 at Response No. 2.) Despite this, Bauer's counsel sent a letter to Midland dated May 30, 2023 (hereinafter "May 30 Counsel Letter"), advising Midland to cease further communications with Bauer on his account and stating that Bauer was represented by counsel. (App. 252, B.R.Doc. 1-4.) Two days later, on June 1, 2023, Bauer, through counsel, promptly filed his Complaint against Midland. (App. 242-46; B.R.Doc. 1.)

## A.    Bauer's Complaint and Discovery

Bauer's Complaint mirrors Smitherman's Complaint. (*Compare* App. 006-10, S.R.Doc. 1, *with* App. 242-46, B.R.Doc. 1.) Like Smitherman, Bauer alleged that Midland violated Section 1692c(c) by sending him the May Response Letter. (App. 243-44, B.R.Doc. 1 ¶¶ 8-10; *see* App. 007-8; S.R.Doc. 1 ¶¶ 8-10.) Regarding alleged injury, Bauer pled identical injuries to Smitherman (down to the same paragraph numbers), stating

> 11. As a result of Defendant's failure to note that the [sic] Mr. Bauer demanded that it cease contact with him, he was forced to take action to his detriment, by taking the time and expense of having his attorney send a letter, instructing Defendant to stop contacting him. . . .
>
> . . .
>
> 15. Defendant's collection actions alarmed, confused and emotionally distressed Mr. Bauer, invaded his right to privacy, caused him to have to retain counsel to direct MCM to leave him alone, and cost him out-of-pocket expense.

(App. 244-45, B.R.Doc. 1 ¶¶ 11, 15.)

Thereafter, the parties engaged in written discovery and Midland took Bauer's deposition. (App. 070-116, S.R.Doc. 26-2 and 26-3.) The discovery revealed as follows:

- Bauer's counsel drafted the April Letter, (App. 290, B.R.Doc. 27-2 at Response No. 9; App. 310, B.R.Doc. 27-3 at 29:19-22), despite that the letter purported to be from Bauer himself, (App. 248, B.R.Doc. 1-2).

- There is no evidence that Bauer paid for postage for sending the May Response Letter to his counsel, (App. 293, B.R.Doc. 27-2 at Response No. 3), and Bauer does not know how he provided the May Response Letter to his counsel, but it was either in person or via email, (App. 310-11, B.R.Doc. 27-3 at 31:22-32:23).

- Bauer does not recall how long he spent reviewing the May Response Letter, but he thinks "[a] few minutes," (App. 310-11, B.R.Doc. 27-3 at 32:24-33:23).

- There is no evidence that Bauer paid for the stamp to mail the May 30 Counsel Letter to Midland. (App. 293, B.R.Doc. 27-2 at Response No. 3; App. 313, B.R.Doc. 27-3 at 41:18-42:17).

- Bauer has not paid his attorney any money for prosecuting this lawsuit. (App. 331, B.R.Doc. 27-3 at 34:11-36:19).

### B. Motions for Summary Judgment and District Court Order

Thereafter, the parties both moved for summary judgment. (App. 261-319, B.R.Docs. 27, 27-1 to 27-3; App. 319-75, B.R.Docs. 28, 29, 29-1 to 29-4.) In Midland's Motion for Summary Judgment, it argued that Bauer's case should be dismissed because he lacked Article III standing and, alternatively, that judgment

should enter for it because Bauer could not establish a violation of Section 1692c(c). (App. 265-82, B.R.Doc. 27.)

Regarding standing, Midland asserted that Bauer could not establish a tangible injury-in-fact because the asserted cost of a postage stamp was wholly contrived to manufacture standing. (App. 270-74, B.R.Doc. 27 at 6-10.) As to asserted intangible injuries, Midland argued that receipt of one benign letter via U.S. mail does not even remotely resemble the tort of intrusion upon seclusion. (App. 274-77, B.R.Doc. 27 at 10-13.) Also, Midland asserted that Bauer could not establish that his alleged "injuries" were caused by the May Response Letter, which was also required to establish standing. (App. 277-78, B.R.Doc. 27 at 13-14.)

Alternatively, Midland asserted that judgment should enter for it because: (1) the animating purpose of the May Response Letter was not to collect a debt; (2) by including the dispute in the April Letter, Bauer waived any claim under Section 1692c(c); and/or (3) the May Response Letter falls within an exception to Section 1692c(c). (App. 278-82, B.R.Doc. 27 at 14-18.)

In Bauer's Motion for Summary Judgment, he argued that the May Response Letter violated Section 1692c(c), because the April Letter advised Midland not to contact him. (App. 327-29, B.R.Doc. 29 at 5-7.) Bauer also argued that he had Article III standing, as he suffered both tangible and intangible harms as a result of the May Response Letter. (App. 329-31, B.R.Doc. 29 at 9.) Regarding tangible

harm, Bauer, like Smitherman, claimed that he "paid money out of pocket via postage and spent time and effort as a result of MCM's illegal collection actions," (App. 331, B.R.Doc. 29 at 9), and regarding intangible harm, he alleged an invasion of privacy and intrusion upon seclusion, which "upset and aggravated him," (App. App. 320, B.R.Doc. 28 at 2).

On July 23, 2024, the District Court, viewing all facts in the light most favorable to Bauer, granted Midland's Motion for Summary Judgment. (App. 426-34, B.R.Doc. 35, Add. 13-21.) First, the District Court determined that Bauer did not meet his burden of establishing Article III standing because he did not demonstrate a tangible or intangible injury. (App. 429-32, B.R.Doc. 35 at 4-7, Add. 16-19.)

Regarding the alleged tangible injuries, the District Court determined that Bauer's testimony regarding the stamp was vague, and the Court doubted that Bauer gave his attorney money for one postage stamp. (App. 430, B.R.Doc. 35 at 5, Add. 17.) Regardless, Judge Kays determined that even if Bauer somehow paid for the stamp for the May 30 Counsel Letter, that letter "was merely an attempt to manufacture standing," because the May Response Letter "specifically indicated that Defendant would no longer contact Plaintiff as requested, and Defendant did not contact him thereafter, making the May Letter entirely unnecessary." (App. 430, B.R.Doc. 35 at 5, Add. 17.)

14

In regard to the alleged "time and effort" to get the May Response Letter to his attorney, the District Court found this asserted injury insufficient because Bauer testified that he already had retained counsel to address his debt issues and that he only spent a few minutes reading it. (App. 430, B.R.Doc. 35 at 5, Add. 17.)

Third, as to the Bauer's alleged emotional distress, the District Court determined that it did not amount to a legally cognizable injury. (App. 431, B.R.Doc. 35 at 6, Add. 18.)

Finally, the District Court rejected Bauer's argument that the May Response Letter, which did not demand payment, violated his privacy and intruded upon his seclusion. (App. 431-32, B.R.Doc. 35 at 6-7, Add. 18-19.) In reaching its conclusion, the District Court determined that the cases Bauer relied upon were distinguishable because those cases involved situations where the debt collectors were "actively attempting to collect a debt after receiving cease-and-desist letters," unlike this case. (*Id.*)

Alternatively, the District Court determined that even if Bauer had standing, his claim failed because the May Response Letter did not violate Section 1692c(c). (App. 432-34, B.R.Doc. 35 at 7-9, Add. 19-21.) The trial court found that the claim failed because Bauer waived his Section 1692c(c) claim with the April Letter disputing his account. (*Id.*) Regarding Midland's additional arguments for why the May Response Letter did not violate Section 1692c(c), the District Court stated that

it only addressed the waiver argument in determining that the May Response Letter did not violate the FDCPA "because this one argument is dispositive." (App. 432, B.R.Doc. 35 at 7, Add. 19.)

## SUMMARY OF ARGUMENT

The District Court properly determined that Smitherman and Bauer failed to establish a concrete injury and, thus, that they lacked standing to bring their 15 U.S.C. § 1692c(c) claims. In reaching its conclusion, the District Court thoroughly considered all of Smitherman and Bauer's proffered injuries and addressed each one. The District Court appropriately determined that the evidence Smitherman and Bauer brought forth was contradictory, the alleged injuries were contrived, and that the asserted injuries were insufficient. Furthermore, the District Court's dismissal of Smitherman and Bauer's Complaints for lack of Article III standing should be affirmed because they brought forward no specific facts to demonstrate that the asserted injuries were caused by the Response Letters.

Alternatively, the District Court properly determined that even if Smitherman and Bauer could establish standing, their Section 1692c(c) claims failed because their Letters disputing the debts invited a response and were permissible under the FDCPA. The District Court's orders granting judgment for Midland should also be affirmed because Section 1692c(c) does not apply to the Response Letters at issue and, also, because the Response Letters fall within an exception to Section 1692c(c).

16

# ARGUMENT

## I. Standards of Review

### A. Orders Dismissing Cases For Lack Of Article III Standing

Smitherman and Bauer's Complaints were dismissed for lack of Article III standing. Plaintiffs must satisfy three elements to establish standing:

> (1) the plaintiff suffered an injury in fact, (2) [the injury] is fairly traceable to the challenged conduct of the defendant, and (3) [the injury] is likely to be redressed by a favorable judicial decision. Plaintiffs, as the parties invoking federal court jurisdiction, bear the burden of establishing these elements.

*F.B. v. Our Lady of Lourdes Par. & Sch.*, No. 23-3624, 2025 WL 86945, at *3 (8th Cir. Jan. 14, 2025). This Court reviews standing *de novo*. *See Bassett v. Credit Bureau Services*, 60 F.4th 1132, 1134 (8th Cir. 2023).

### B. Orders Granting Summary Judgment For Midland

This Court reviews *de novo* the grant (or denial) of a motion for summary judgment and affirms if there is no genuine dispute as to any material fact. *Est. of Barnwell by & through Barnwell v. Watson*, 880 F.3d 998, 1004 (8th Cir. 2018).

"And while the non-moving party receives the benefit of all reasonable inferences supported by the evidence, the non-moving party is still obliged to come forward with specific facts showing that there is a genuine issue for trial." *Watson*, 880 F.3d at 1004. The specific facts must be supported by "admissible evidence." *Sallis v. Univ. of Minn.*, 408 F.3d 470, 474 (8th Cir. 2005).

## C. Evidentiary Decisions

This Court reviews the District Court's evidentiary decisions for clear abuse of discretion. *Gier By & Through Gier v. Educ. Serv. Unit No. 16*, 66 F.3d 940, 942 (8th Cir. 1995); *see also*, *Oglesby v. Lesan*, 929 F.3d 526, 534 (8th Cir. 2019) (stating that "[w]e defer to admissibility determinations under an abuse-of-discretion standard of review, even at summary judgment."). This Court also accepts as true "the facts that the district court likely assumed, to the extent they are not 'blatantly contradicted by the record.'" *Burnikel v. Fong*, 886 F.3d 706, 709 (8th Cir. 2018).

## II. The District Court Properly Determined That Smitherman And Bauer Lacked Article III Standing

The parties do not dispute that Smitherman and Bauer must establish that they have Article III standing, which requires that they demonstrate: (1) an injury-in-fact; (2) that is fairly traceable to Midland's challenged conduct; and (3) that is likely to be redressed by a favorable judicial decision. *Bassett v. Credit Bureau Servs., Inc.*, 60 F.4th 1132, 1135 (8th Cir. 2023) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). The parties also do not dispute that an injury-in-fact may be tangible or intangible. *Rydholm v. Equifax Info. Servs. LLC*, 44 F.4th 1105, 1108 (8th Cir. 2022).

Instead, the parties dispute whether the District Court correctly determined that Smitherman and Bauer did not meet their burden of proof to establish that they suffered a tangible or intangible injury-in-fact. Also, Midland asserts that

Smitherman and Bauer did not meet their burden of proof to establish that their alleged injuries were caused by receipt of the Response Letters.

**A.    The District Court Correctly Determined That Smitherman And Bauer Failed To Establish An Injury-In-Fact**

Smitherman and Bauer asserted four categories of injuries in the District Court, which the District Court summarized as follows in Smitherman (and similarly in Bauer):

> (1) out-of-pocket expenses for the stamp; (2) the 'time and effort' it took to involve her attorney in the matter; (3) emotional distress manifesting itself in 'los[t] sleep, being upset, and lashing out at family' and, (4) that Defendant's actions invaded her privacy and intruded upon her seclusion.

(App. 231, S.R.Doc. 33 at 5, Add. 8; App. 430, B.R.Doc. 35 at 5, Add. 17.)

Of course, to substantiate their allegations, Smitherman and Bauer were required to come forth with "sufficient probative evidence that would permit a finding in their favor on more than mere speculation, conjecture, or fantasy." *Moody v. St. Charles Cnty.*, 23 F.3d 1410, 1412 (8th Cir. 1994) (cleaned up); *see Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 869 (8th Cir. 2013) (discussing Article III standing and stating that at the summary judgment stage, plaintiff "must set forth by affidavit or other evidence specific facts"), *enforced sub nom. Iowa League of Cities v. Env't Prot. Agency*, No. 11-3412, 2021 WL 6102534 (8th Cir. Dec. 22, 2021). However, as to all these alleged injuries, Smitherman and Bauer brought forth nothing but speculation, conjecture, and ersatz injury, none of which are sufficient

to create a genuine issue of material fact. *Bloom v. Metro Heart Grp. of St. Louis, Inc.*, 440 F.3d 1025, 1028 (8th Cir. 2006). As set forth below, the District Court properly rejected those alleged injuries.

### 1. The Postage Stamps

Regarding postage, relying upon their deposition testimony, Smitherman and Bauer both (sort of) asserted that they incurred out-of-pocket expenses by paying for postage. (Appellate Br. at 16.) As to Smitherman, the District Court determined that her testimony regarding the stamp "is contradictory, and the Court doubts Plaintiff gave her attorney a pre-stamped envelope." (App. 231, S.R.Doc. 33 at 5, Add. 8.) Regarding Bauer, the District Court concluded that the testimony regarding the stamp "is vague, and the Court doubts Plaintiff gave his attorney money for one postage stamp." (App. 430, B.R.Doc. 35 at 5, Add. 17.) The District Court's conclusions were fully supported by the record, as set forth below.

### a. Smitherman

In Smitherman's Motion for Summary Judgment, Smitherman made a passing refence to "postage," (App. 124, S.R.Doc. 28 at 4 ¶ 10), and thereafter Smitherman asserted that she "testified that she paid the postage for [the] March 22, 2023 letter her counsel sent to MCM, (App. 204, S.R.Doc. 32 at 5 ¶ 16).

Regarding the cost of postage for sending the February 24 Response Letters to her attorney, Smitherman testified that: "**I mailed it. I'm pretty sure I mailed**

**it**." (App. 095-96, S.R.Doc. 23-3 at 44:4-46:4.) Regarding postage for sending the

March 22 Counsel Letter, Smitherman testified:

> Q [Midland's counsel]: Your lawyer has represented, through a stipulation, that you paid for the postage that was associated with exhibit D to the complaint, which was a letter from the Callahan Law Firm to Midland Credit Management. Did you hear those discussions, ma'am?
>
> **A [Smitherman]. Yes, I did**.
>
> Q [Midland's counsel]. And do you agree that that occurred?
>
> **A [Smitherman]. It had to have.**
>
> Q [Midland's counsel]. Okay. Do you recall how you paid your law firm for the postage that was associated with the March 22nd, 2023, letter from the Callahan Law Firm?
>
> **A [Smitherman]. Well, that's almost a year ago. No, I don't exactly recall.**

(App. 099, S.R.Doc. 23-3 at 57:9-58:2.) Smitherman further testified that: "**I think**

**I may have given him envelopes with stamps on them**," and:

> **I think I gave him stamps. Like I said, it's been over a year. It's a little hard to remember it clearly but I remember us talking about giving him a stamped envelope.**

(App. 099, S.R.Doc. 23-3 at 59:12-21.)

On appeal, Smitherman cites to nothing more than her Complaint, the March

22 Counsel Letter, and her summary judgment brief. (Appellate Br. at 16.)

However, <u>none</u> of those documents contain or consist of <u>evidence</u>, let alone

admissible evidence, to substantiate that Smitherman paid for any postage.

The law is clear that a party invoking federal jurisdiction bears the burden of establishing jurisdiction "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, (1992). Of course, at the summary judgment stage, Smitherman was required to come forward with evidence that would be admissible at trial to demonstrate that she suffered an injury-in-fact (and that it was caused by the Response Letters). *E.g.*, *Tuttle v. Lorillard Tobacco Co.*, 377 F.3d 917, 924 (8th Cir. 2004). However, as set forth above, Smitherman's only "evidence" was her testimony and the District Court correctly determined that her testimony was contradictory and, moreover, it was vague and conclusory. This Court has determined that vague and conclusory testimony is insufficient to raise a genuine issue of material fact. *Id.*

Indeed, Smitherman's testimony was scattered and contradictory. At one point Smitherman posits that she gave her lawyer "stamps" to mail the March 22 Counsel Letter. (App. 099, S.R.Doc. 23-3 at 59:1-18.) Was her lawyer in need of such assistance in navigating the postal process? Even more bizarre, Smitherman asserted that she "may have" instead given her lawyer a pre-stamped envelope to send the March 22 Counsel Letter. (App. 099, S.R.Doc. 23-3 at 59:1-13.) This conflicting and rather far-fetched testimony fails to meet the required evidentiary standard. *See Owner-Operator Indep. Drivers Ass'n v. United States Dep't of*

*Transportation*, 878 F.3d 1099, 1102 (8th Cir. 2018), *as corrected on denial of reh'g* (Apr. 3, 2018) (holding that the plaintiff must bring forward "specific facts" to support standing). Thus, the District Court's finding that Smitherman's testimony was inadequate to establish a concrete injury was not an abuse of discretion and should be affirmed.

### b. Bauer

In Bauer's Motion for Summary Judgment, like Smitherman, he made a passing reference to "postage," (App. 325, B.R.Doc. 29 at 3 ¶ 11), and thereafter argued that "Mr. Bauer paid the cost of postage to send out his attorney's May 30, 2023 letter to MCM," citing to his deposition testimony, (App. 402, B.R.Doc. 33 at 9 ¶ 15).

Regarding the May Response Letter, Bauer did not mail it to his attorney, rather, he gave it to his attorney in person or via email. (App. 310, B.R.Doc. 27-3 at 31:16-32:23.) Regarding the May 30 Counsel Letter, Bauer testified that he has not paid his counsel any money or expenses and that he does not remember if he made a specific payment for postage," as follows:

> Q [Midland's counsel]. All right. Now your attorney has made the stipulation that you were required to pay for the postage related to this particular letter. Did you hear him?
>
> **A [Bauer]. Yes.**
>
> Q [Midland's counsel]. And do you agree with him.
>
> **A [Bauer]. Yes.**

Q [Midland's counsel].  Now, with respect to that payment, did you specifically write a check or provide cash or otherwise make a specific payment for that, shall we say 61 cents for the postage?

**A [Bauer].  I don't remember.  I -- it wasn't like billed to me.  I'm sure I had change in my pocket.**

(App. 311, B.R.Doc. 27-3 at 36:7-19.)

Then, in response to counsel's question about whether Bauer placed a stamp on the May 30 Counsel Letter and mailed it, Bauer testified: "**I don't recall doing that, no.  I think my attorney took care of that**." (App. 313, B.R.Doc. 27-3 at 42:4-17.)  Thus, there is <u>no</u> evidence that Bauer incurred any postage whatsoever as a result of the May Response Letter.

On appeal, Bauer fails to cite to <u>any</u> evidence whatsoever in the record to demonstrate to the contrary.  Instead, like Smitherman, he cites to his Complaint, his counsel's letter to Midland (the May 30 Counsel Letter), and his summary judgment motion where he asserted that: "As a result of MCM sending Mr. Bauer the collection letter and documentation that he did not request, and contacting him when he explicitly told MCM to stop contacting him, Mr. Bauer had to take the time [sic] effort and expense to send the materials to his attorney . . ., and have his attorney send a letter, instructing MCM to stop contacting him.  (Doc. 1-4)." (Appellate Br. at 16 (citing App. 325, B.R.Doc. 29 at 3 ¶ 10)).  Of course, this citation in his summary judgment motion does not address postage, nor does his Appellate Brief cite to any evidence in the record that contains specific facts that demonstrate that

Bauer actually paid his attorney for postage. Thus, the District Court did not abuse its discretion by determining that Bauer's asserted out-of-pocket expense was inadequate to establish a concrete injury.

### 2.      An Unnecessary Postage Stamp Is Not An Injury

Alternatively, the District Court found that the stamp, regardless of who actually paid for it, was a contrived injury clearly intended to manufacture standing. (App. 231, S.R.Doc. 33 at 5, Add. 8; App. 430, B.R.Doc. 35 at 5, Add. 17.) The District Court's conclusion was apt, because "that type of self-inflicted harm is not enough to confer standing without showing another concrete injury that is either current or certainly impending." *Crawford v. L. Offs. of Brett Borland*, No. 23-191, 2024 WL 187825, at *4 (S.D. Ohio Jan. 12, 2024).

This Court, like the District Court, should see through such obvious efforts to circumvent the Supreme Court's mandate of actual injury as a necessary precursor to federal court jurisdiction.

### 3.      "Time and Effort"

Next, in their Motions for Summary Judgment, Smitherman and Bauer asserted that the time and effort spent (i.e., "trouble") re-asserting their rights under the FDCPA are sufficient to establish Article III standing. (App. 129, S.R.Doc. 28 at 9; App. 331, B.R.Doc. 29 at 9.) As to Smitherman, the District Court determined that she testified "she did not really look at the Response Letters when she received

them, and she had already retained counsel to address her debt issues . . . ."  (App. 231, S.R.Doc. 33 at 5, Add. 8.)  Furthermore, the District Court considered the cases that Smitherman relied upon regarding time and effort being a cognizable injury and distinguished them.  (App. 232, S.R.Doc. 33 at 6, Add. 9.)

As to Bauer, the District Court concluded that he testified he only spent a few minutes reading the May Response Letter and, like Smitherman, he had already retained counsel to address his debt issues when he received the May Response Letter.  (App. 431, B.R.Doc. 35 at 6, Add. 18.)

On appeal, Smitherman and Bauer cite to several cases that they assert support the conclusion that time and effort to re-assert one's rights under the FDCPA are sufficient to establish Article III standing.  (Appellate Br. at 15-23.)  Those cases do not support their position.

Smitherman and Bauer principally rely upon *Mack v. Resurgent Cap. Servs., L.P.*, 70 F.4th 395, 407 (7th Cir. 2023), but they ignore that plaintiff provided evidence to show that she actually paid for postage (including certified mail fees).  *Id.* at 400.  That is <u>not</u> the situation here.  There is <u>no</u> evidence in the record as to any payments for postage.

Smitherman and Bauer also cite to this Court's orders in *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685 (8th Cir. 2017) and *Hekel v. Hunter Warfield, Inc.*, 118 F.4th 938, 944 (8th Cir. 2024), but neither of those cases support that "time and

effort," without more, are concrete injuries for purposes of Article III standing. In *Demarais*, the plaintiff appeared twice for trial with his attorney, but defendant had no witnesses and evidence and, the second time, dismissed the case against plaintiff with prejudice. *Demarais*, 869 F.3d at 690. After that, defendant served plaintiff with written discovery and informed plaintiff that he was required to provide responses within 30 days. *Id.* This Court held that plaintiff established an injury because he was being subjected to attempts (e.g., written discovery from defendant) to collect a debt after the debt was extinguished and, moreover, that plaintiff was forced to appear twice for trial with his attorney for a debt he asserts he did not owe. *Id.* at 692.

Recently, this Court in *Hekel* discussed *Demarais* and whether lost "time and money" qualify as concrete injuries for purposes of Article III standing. Contrary to Smitherman and Bauer's assertion (Appellate Br. at 16), the Court did not hold that "time and effort are sufficient on their own." Rather, the Court determined that plaintiff's conclusory allegations of lost "time and money" were insufficient to establish "the concrete and particularized injury required for standing." *Hekel*, 118 F.4th at 944. Furthermore, the Court distinguished *Demarais* stating that *Hekel* failed to provide any specific "out-of-pocket" expenses that defendant caused her to incur, even if *Demarais* survived the United States Supreme Court's opinion in *TransUnion LLC v. Ramirez,* 594 U.S. 413 (2021). *Id.* at 943 n.1.

Finally, Smitherman and Bauer cite to *Walters v. Fast AC, Ltd. Liab. Co.*, 60 F.4th 642 (11th Cir. 2023), but that case did not hold that the "time and effort" to reassert plaintiff's rights on its own is sufficient to confer standing. Rather, the plaintiff in *Walters* testified that the issue impacted his credit score and prevented him from purchasing a truck and from refinancing his home. *Id.* at 646-47. Also, plaintiff testified that he spent money faxing documents to his attorney to try and resolve the debt that he asserted he did not owe. *Id.* at 647; *compare*, *Gilbert v. TrueAccord Corp.*, 608 F. Supp. 3d 656, 664 (N.D. Ill. 2022) (holding that the time spent consulting or hiring an attorney will not confer standing).

Here, as set forth above, Smitherman testified that she "did not really look at" the February 24 Response Letters, and Bauer testified that he "spent only a few minutes" looking at the May Response Letter. Even if "time and effort" (i.e., "trouble") were a basis for standing, which Midland disputes, these de minimis reviews were neither time nor effort.

Furthermore, as the District Court found, the Response Letters did not require Smitherman and Bauer to do anything. (App. 231, S.R.Doc. 33 at 5, 8, Add. 8, 11; App. 430, B.R.Doc. 35 at 5, 8, Add. 17, 20.) Indeed, a judicious review of the Response Letters demonstrates that there was <u>no</u> request that Smitherman and Bauer take any action, nor was there any advisement that any action was being taken against them. (App. 018-33, S.R.Doc. 1-3; App. 250, B.R.Doc. 1-3.) The Response

Letters expressly stated, "we will no longer be contacting you regarding this account by phone or in writing," *id.* The Response Letters simply provided information about the accounts at issue.

Thus, even if Smitherman and Bauer had brought forth evidence of "time and effort" spent to address the Response Letters, the District Court correctly determined that "a plaintiff cannot create an injury by taking precautionary measures against a speculative fear, citing to *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 865 (6th Cir. 2020). (App. 231, S.R.Doc. 33 at 5, Add. 8; App. 430, B.R.Doc. 35 at 5, Add. 17.)

### 4. Emotional Distress

In their Motions for Summary Judgment, Smitherman and Bauer seemed to assert they suffered an injury-in-fact because the Response Letters caused them emotional distress. (App. 124, S.R.Doc. 28 at 4; App. 325, B.R.Doc 29 at 3.) The District Court addressed their alleged emotional distress and determined, citing to *Ojogwu* and *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992), and held that "emotional distress without more does not amount to a legally cognizable injury." (App. 232, S.R.Doc. 33 at 6, Add. 9; App. 431, B.R.Doc. 35 at 6, Add. 18.)

On appeal, Smitherman asserts in her Statement of the Case that "MCM's collection actions caused Ms. Smitherman aggravation, emotional distress, and lost time form work," *inter alia*. (Appellate Br. at 5.) Bauer asserts in his Statement of

the Case that "MCM's collection actions caused Mr. Bauer to be "very upset," feel "hunted," and caused him to lose sleep, *inter alia*. (Appellate Br. at 7-8.) However, neither party addressed whether they assert that the District Court's conclusion regarding emotional distress was erroneous.[6] (*See* Appellate Br. at 15-23.) Thus, the Court should determine that Smitherman and Bauer abandoned any asserted "emotional distress" as a stand-alone basis for an intangible injury. Fed. R. App. P. 28(a).

Federal Rule of Appellate Procedure 28(a) provides that an appellant's brief "shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor." This Court has determined that "[a] party's failure to raise or discuss an issue in his brief is to be deemed an abandonment of that issue." *Jasperson v. Purolator Courier Corp.*, 765 F.2d 736, 740 (8th Cir. 1985). And, not only must the party merely "raise" the issue, but it must present a meaningful explanation of the argument and cite to relevant authority. *Waters v. Madson*, 921 F.3d 725, 744 (8th Cir. 2019). Smitherman and Bauer have not done that regarding "emotional distress" being the basis of a stand-alone injury.

---

[6] Smitherman and Bauer do discuss their alleged "emotional distress," but only in conjunction with their invasion of privacy argument and they do not acknowledge the District Court's determinations regarding emotional distress or discuss case law pertaining to the same. (*See* Appellate Br. at 29.)

Even if they had, the District Court correctly determined that "emotional distress without more does not amount to a legally cognizable injury." (App. 232, S.R.Doc. 33 at 6, Add. 9; App. 431, B.R.Doc. 35 at 6, Add. 18.) In fact, this Court recently reiterated in *Hekel* that negative emotions fall short establishing an injury for purposes of Article III standing, stating that:

> In *Ojogwu v. Rodenburg Law Firm*, we concluded that being in a "state of confusion is not itself an injury," and "nervousness, restlessness, irritability, amongst other negative emotions" are not either. 26 F.4th at 463 (first quoting *Pennell v. Glob. Tr. Mgmt.*, *LLC*, 990 F.3d 1041, 1045 (7th Cir. 2021) and then quoting *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 864 (6th Cir. 2020)). Hekel's complaint substitutes some words—"sleeplessness" for "restlessness" and "worry" for "nervousness"—but the "negative emotions" they describe are basically the same. *Id.* at 463. And under *Ojogwu*, none gives rise to standing. *Id.*; *see also Liberty Mut. Ins. Co. v. Elgin Warehouse & Equip.*, 4 F.3d 567, 571 (8th Cir. 1993) ("In this circuit[,] only an en banc court may overrule a panel decision ....").

*Hekel,* 118 F.4th at 943. Thus, for both of these reasons, the District Court's conclusion that Smitherman and Bauer's alleged emotional distress does not amount to a cognizable injury should be affirmed.

### 5. Invasion of Privacy

In the District Court, as another basis of establishing an injury-in-fact, Smitherman and Bauer asserted that the Response Letters violated their privacy and intruded upon their seclusion. The District Court addressed Smitherman and Bauer's argument and determined that the cases they cited did not support their legal theory because those cases involved situations where a debt collector was actively

attempting to collect a debt after receiving cease-and-desist letters, unlike this case. (App. 232-33, S.R.Doc. 33 at 6-7, Add. 9-10; App. 431-32, B.R.Doc. 35 at 6-7. Add. 18-19.) As to the Response Letters in this case, the District Court determined that they were "clearly intended to clarify the amount owed after Plaintiff disputed the debt amount." (App. 232-34 S.R.Doc. 33 at 7, App. 10; App. 432, B.R.Doc. 35 at 7, Add. 19.)

Smitherman and Bauer assert that the District Court's conclusion was erroneous because: (1) the Response Letters were collection letters; and (2) they suffered the same kind of harm recognized at common law and by Congress when enacting the FDCPA. (Appellate Br. at 23-29.) Their arguments are not supported by Supreme Court precedent or the law in this Circuit.

In *TransUnion*, the Supreme Court instructed that intangible harms may qualify as concrete injuries only under the narrow circumstances where the intangible harm bears a "*close relationship*" to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* at 425 (emphasis added). This Court has aptly interpreted this requirement.

When determining whether the intangible harm bears a "close relationship" to the common-law analogue, this Court in *Bassett* discussed the core components of the asserted common-law analogue (in that case, fraudulent misrepresentation and conversion). *Bassett*, 60 F.4th 1132, 1135-36. The *Bassett* Court then looked to the

record and determined that it was devoid of any core components of the analogues (i.e., no "reasonable reliance" to support a fraud claim, and no "deprivation of property rights" to support a conversion claim). *Id.* at 1137. Thus, the Court concluded that the plaintiff in *Bassett* did not show any harm that bears a "close relationship" to the type of injury that results from reliance on a misrepresentation or wrongful interference with property rights, and that "the absence of any injury resembling these harms means Bassett did not suffer a concrete injury in fact." *Id.* at 1136-37.

Distilled, the central holding in *Bassett* is that standing claims derived from intangible injuries require that the alleged injury must be "the same kind of harm as required by the [common law tort]." *Bassett*, 60 F.4th at 1137. In other words, if a core element of the cause of action is missing, there is not a "close" resemblance to the common-law tort, and therefore, no basis for standing.

Here, as to invasion of privacy, there is no legally protected right to privacy under Missouri common law. *See Ebaugh v. Medicredit, Inc.*, No. 23-209, 2023 WL 5289226, at *2 (E.D. Mo. Aug. 17, 2023). Missouri does, however, recognize the tort of "intrusion upon seclusion." However, a review of the record in this case and the tort of intrusion upon seclusion reveal that there simply is no "close relationship" in this case.

The Restatement (Second) of Torts identifies the tort as:

One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person.

Restatement (Second) of Torts § 652B (1977). Thus, for there to be a "close relationship," unquestionably and at a minimum, there must first be a physical or other intrusion of one's "solitude or seclusion" and the intrusion must be highly offensive for the tort to apply.

Receipt of the Response Letters (one letter in response to each of Smitherman and Bauer's letters) in Smitherman and Bauer's mailboxes is simply not an "intrusion" into their "solitude or seclusion." Moreover, as a matter of law, receipt of the Response Letters at issue would not be "highly offensive to a reasonable person."

### a. The Response Letters Were Not An Intrusion Into Smitherman and Bauer's Privacy And Seclusion

Smitherman and Bauer conclusorily trumpet that the Response Lettes intruded upon their seclusion, but they do not actually discuss the particulars of a claim for intrusion upon seclusion. (*See* Appellate Br. at 34-40.) As set forth above, a physical or other intrusion of one's "solitude or seclusion" is a necessary component of the tort of intrusion upon seclusion. The essence of such a claim simply does not exist without such an intrusion.[7] The passive placement of a letter in one's mailbox (by

---

[7] Midland is not asserting that the Court should adopt the "kind" versus "degree" analysis, and notes that this Court in *Braitberg v. Charter Communications, Inc.*,

the U.S. Postal Service)—which the recipient could choose to never open—is simply

not analogous to the numerous examples of actionable intrusions contained in the

Restatement (Second) of Torts, such as:

- "[W]hen the defendant forces his way into the plaintiff's room in a hotel or insists over the plaintiff's objection in entering his home," Restatement (Second) of Torts § 652B cmt. b (1977); and

- "A, a private detective seeking evidence for use in a lawsuit, rents a room in a house adjoining B's residence, and for two weeks looks into the windows of B's upstairs bedroom through a telescope taking intimate pictures with a telescopic lens," *id.* at illustration 2.

In their Appellate Brief, the only case that Smitherman and Bauer cite to

where a court held that receipt of one letter in a mailbox constituted an actionable

intrusion is *Denmon v. Kansas Couns., Inc.*, No. 21-00457, 2023 WL 7179809, at

*2 (W.D. Mo. Nov. 1, 2023). Notably, that case is on appeal before this Court,

*Denmon v. Kansas Counselors, Inc.*, No. 23-3612, and the Court heard oral argument

in the case on January 14, 2025.[8]

---

836 F.3d 925, 930 (8th Cir. 2016), and *Demarais*, 869 F.3d 685, declined to address whether the analogy between an intangible harm and a related traditional harm should be measured "in kind" or in "degree." The facts of this case are so plainly short of a "close" common-law analogue that it remains unnecessary for this Court to take a position on this disputed legal framework.

[8] A link to oral argument is located at http://media-oa.ca8.uscourts.gov/OAaudio/2025/1/233612.MP3. Notably, Denmon's counsel, the same counsel that represents Smitherman and Bauer in this case, conceded that receipt of an informational letter (i.e., one that does not ask the debtor to pay the debt), may not be actionable. *See* oral argument audio at 15:00-15:30.

The other cases that Smitherman and Bauer cite (six federal circuit court cases) do <u>not</u> involve a letter received via U.S. Mail, and do not support the proposition that receipt of one letter via U.S. Mail (whether it was in connection with collection of a debt or not) is an actionable intrusion. Nor do those cases support the implied proposition that this Court should ignore the elements of the common-law analog and look only to the "kind" of injury the statute at issue protects, as Smitherman and Bauer suggest.

First, at issue in *Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1189 (10th Cir. 2021) and *Ward v. NPAS, Inc.*, 63 F.4th 576, 580 (6th Cir. 2023) were telephone calls, which are not at issue in this case.

In *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1193 (7th Cir. 2021), the court held that plaintiff had standing to sue because defendant reviewed her credit information (i.e., plaintiff's propensity-to-pay score) without a permissible purpose. Notably, in *Persinger*, when considering the common law analog of intrusion upon seclusion, the court determined that it "must look behind this allegation to determine whether the challenged conduct bears a 'close relationship' to the tort." *Id.* at 1191. The court analogized the unauthorized review of plaintiff's credit report with "[a]n unauthorized inquiry into a consumer's propensity-to-pay score is analogous to the unlawful inspection of one's mail, wallet, or bank account." *Id.* at 1192. Here, there

was no such personal "intrusion," as anyone may place mail in a person's post office box.

Text messages were at issue in *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 463 (7th Cir. 2020)[9], and *Ewing v. MED-1 Sols., LLC*, 24 F.4th 1146, 1152 (7th Cir. 2022) involved credit reporting of false information. Neither text messages or credit reporting are at issue in this case. Moreover, as to the asserted "kind not degree" analysis, in *Ewing* the court reviewed <u>the elements</u> of the common-law analogue and discussed the required elements, finding that they were satisfied. *Id.* at 1154.

Finally, contrary to Smitherman and Bauer's allusion, in *Ojogwu v. Rodenburg L. Firm*, 26 F.4th 457, 462 (8th Cir. 2022), this Court did <u>not</u> suggest that the elements of the common-law analogue should not be consulted. And, while the *Ojogwu* Court did note that "[m]ost circuits to consider the issue have concluded that a consumer debtor has Article III standing to assert an FDCPA claim that a debt collector's <u>harassing</u> calls or letters invaded a privacy interest protected by the well-established tort of 'intrusion upon seclusion,'" it stated that the concrete harm injury

---

[9] Likewise, the Seventh Circuit in *Freeman v. Ocwen Loan Servicing, LLC*, 113 F.4th 701 (7th Cir. 2024) also reviewed the elements of the common-law analogue and determined that because one element was not satisfied, the common-law analogue failed. Discussing *Gadelhak*, the court in *Freeman* also clarified that it is not enough to establish standing for plaintiff to be "annoyed" or "intimidated" by an FDCPA violation, and that "stress by itself with no physical manifestations and no qualified medical diagnosis does not amount to a concrete harm." *Freeman*, 113 F.4th at 710 (cleaned up).

is fact specific. *Id*. at 463 n.4 (emphasis added). Here, the letters at issue were certainly not "harassing," nor did they even demand payment.

In fact, courts that have addressed the issue of whether receipt of one benign letter via U.S. mail constitutes an intrusion upon seclusion have found that it does not. *Pucillo v. Nat'l Credit Sys., Inc.*, 66 F.4th 634, 640 (7th Cir. 2023); *Ebaugh*, 2023 WL 5289226, *3; *see also*, *Simpson v. Revco Sols., Inc.*, No. 22-00483, 2022 WL 17582742, at *5 (S.D. Ill. Dec. 12, 2022) (holding that a single letter is not the type of communication that is particularly intrusive to an individual's private life and, thus, the plaintiff lacked standing to sue under the FDCPA); *cf.*, *Ojogwu*, 26 F.4th at 464 (intangible harm arising from a direct mailing in violation of Section 1692c(a)(2) does not confer standing). Specifically, *Pucillo* and *Ebaugh* support that intangible harm from receiving a letter mailed to a person's mailbox is simply not, without more, similar to the kind of harm arising from an intrusion upon seclusion.

Regarding *Pucillo*, the Seventh Circuit squarely addressed whether letters sent to a plaintiff allegedly in violation of the FDCPA are sufficient to confer standing based upon the common-law analogue of intrusion upon seclusion, and answered "no," determining:

> Pucillo points to only the letters. And while courts have allowed intrusion upon seclusion liability for 'irritating intrusions,' there is nothing inherently bothersome, intrusive, or invasive about a collection letter delivered via U.S. Mail.

*Pucillo*, 66 F.4th at 640.

In *Ebaugh*, the court rejected plaintiff's assertion that receipt of a letter in violation of Section 1692c(c) results in "the same kind [of injuries] held actionable under common law invasion of privacy tort theories." *Ebaugh*, 2023 WL 5289226, *1. In rendering its decision, the court drew a distinction between "messages to one's cellphone from those based on a letter delivered to a mailbox." *Id.* *3.

In sum, because Smitherman and Bauer did not establish that receipt of the Response Letters was an intrusion into their privacy and seclusion, the Court should affirm the District Court's order dismissing their Complaints for lack of Article III standing.

**b.    Receipt Of The Response Letters Via U.S. Mail in One's Mailbox Would Not Be Highly Offensive To A Reasonable Person**

Smitherman and Bauer's intrusion upon seclusion common-law analogue also fails because the Response Letters would not be "highly offensive to a reasonable person." Thus, to use Smitherman and Bauer's vernacular, the Response Letters are not the same "kind" of harm arising from intrusion upon seclusion.

As to whether the receipt of the one unwanted letter in the mail is "highly offensive to a reasonable person," Smitherman and Bauer do not even try to advance that it is. Rather, Smitherman and Bauer assert that <u>they</u> suffered aggravation, upsettedness, and loss of sleep. (Appellant Br. at 29.) This is not the issue, however,

when considering whether the common-law analogue is applicable.  The standard is clearly an objective one.   Indeed, Smitherman and Bauer must show that the Response Letters would be "highly offensive to a reasonable person," and courts may decide the highly offensive issue as a matter of law.  *Sofka v. Thal*, 662 S.W.2d 502, 511 (Mo. 1983) (determining as a matter of law that the telephone calls at issue would not be offensive to the ordinary person and granting summary judgment for defendant on plaintiff's intrusion upon seclusion claim); *Santoro v. Tower Health*, No. 22-4580, 2024 WL 1773371, at *6 (E.D. Pa. Apr. 24, 2024) (holding that as a matter of law, no reasonable person could find the conduct at issue offensive), *reconsideration denied*, No. CV 22-4580, 2024 WL 4771398 (E.D. Pa. Nov. 13, 2024) (quoting *Nickelodeon*, 827 F.3d 262 n.205 (quoting *Boring v. Google, Inc.*, 362 F. App'x 273, 279 (3d Cir. 2010)); *Smocks v. Preston Heights Apartments*, No. 22-787, 2024 WL 38284, at *4 (E.D. Tex. Jan. 3, 2024) (holding as a matter of law that no person could find the conduct at issue offensive), *appeal dismissed*, No. 24-40016, 2024 WL 3325537 (5th Cir. Feb. 14, 2024); *Sharp-Richardson v. Boyds Collection, Ltd.*, No. 96-0344, 1999 WL 33656875, at *14 (N.D. Iowa Sept. 30, 1999) (holding as a matter of law that no reasonable person would find the conduct at issue offensive).

Further support that a reasonable person would not find the Response Letters highly offensive is that people receive unwanted mail on a near daily basis.  It is

deposited by the U.S. Postal Service in mailboxes. Then, the recipients review the mail (or not) as they deem fit and on their timetable. Receipt of unwanted mail in one's postal box is simply not offensive. *Cf. Branham v. TrueAccord Corp.*, No. 22-00531, 2023 WL 2664010, at *6 (N.D. Ill. Mar. 28, 2023) (holding that receipt of two emails is not "highly offensive" to a reasonable person).

Even if Smitherman and Bauer's subjective response (i.e., upset, anger, loss of sleep) were enough to demonstrate a highly offensive intrusion, the evidence they proffered is insufficient. As set forth above, this Court has repeatedly held that conclusory allegations, like sleeplessness, confusion, worry, and irritability, fall short of the type of injuries required to establish an injury-in-fact for purposes of Article III.[10] *Hekel*, 118 F.4th at 943 (citing, *inter alia*, *Ojogwu*, 26 F.4th at 463); *see also*, *Six v. IQ Data Int'l Inc.*, 673 F. Supp. 3d 1040, 1045 (D. Ariz. 2023)

---

[10] Also, Smitherman asserted that she missed work, but she provided no specific facts to support her assertion, and simply stated "I lost time from work, but that's more along the lines of aggravation." (App. 100, S.R.Doc. 26-3 at 61:15-62:4.) Furthermore, in discovery, Midland asked Smitherman to provide documents supporting any actual damages she claimed in this case, and Smitherman responded that she had no such documents, other than the documents attached to her Complaint. (App. 075, S.R.Doc. 26-2 at p. 8.) Midland also asked Smitherman to detail all injuries and damages that she asserts were the result of the February 24 Response Letters, and Smitherman did not identify any loss of work as the basis of an injury. (App. 079-81, S.R.Doc. 26-2 at pp. 12-14.) As such, the District Court did not abuse its discretion by determining that her one-time reference to missing work was not enough to survive summary judgment. (App. 232, S.R.Doc. 33 at 6, Add. 9.)

(holding that an "[i]ntrusion upon seclusion requires more than just an emotional response—it requires a particular kind of offensive intrusion.").

Thus, because Smitherman and Bauer did not establish that the Response Letters would be highly offensive to a reasonable person, nor was there sufficient evidence to demonstrate that the Response Letters were "highly offensive" to them, the District Court's dismissal for lack of injury-in-fact should be affirmed.

### B. The District Court's Orders Dismissing Smitherman And Bauer's Complaints For Lack Of Article III Standing Should Be Affirmed Because They Failed To Establish Causation

The District Court's orders dismissing Smitherman and Bauer's Complaints for lack of Article III standing should be affirmed for the independent reason that Smitherman and Bauer did not establish that their alleged injuries were caused by receipt of the Response Letters. *See Fullington v. Pfizer, Inc.*, 720 F.3d 739, 747 (8th Cir. 2013) (holding that the district court's decision may be affirmed for any basis supported by the record, regardless of whether the district court relied on alternative reasoning).

Undisputedly, to establish Article III standing, Smitherman and Bauer must establish that the injury is "fairly traceable to the challenged conduct of the defendant." *Spokeo*, 578 U.S. at 338. Thus, even if Smitherman and Bauer established they had an injury-in-fact, they were also required to establish that the concrete injury was "*caused by* the defendant." *Ojogwu*, 26 F.4th at 464 (quoting

*TransUnion*, 141 S. Ct. at 2203). The Supreme Court recently reiterated that "line of causation between the illegal conduct and injury—the links in the chain of causation—must not be too speculative or too attenuated." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024) (cleaned up).

Here, even if Smitherman and Bauer had brought forth some concrete injury, there is no evidence that the injury was *caused* by the Response Letters. Again, the Response Letters merely provided information about the accounts and concluded by advising Smitherman and Bauer that "as previously requested by you, we will no longer be contacting you regarding this account by phone or in writing . . . ." (App. 018-19, S.R.Doc. 1-3; App. 250-51, B.R.Doc. 1-3.) Thus, there simply was no reason for Smitherman and Bauer's attorney to mail the March 22 and May 30 Counsel Letters.

Regarding Smitherman and Bauer's testimony that the Response Letters caused them to be upset, *inter alia*, the testimony is insufficient because such "self-serving and conclusory statements [are] incapable of surviving summary judgment." *See Peterson v. Experian Info. Sols.*, 44 F.4th 1124, 1128 (8th Cir. 2022). In fact, Smitherman and Bauer's own Statement of the Case concedes the lack of causation between the Response Letters and any alleged emotional discomfort. Smitherman and Bauer state that Midland's "collection actions" and "collection communications" caused them to be upset. (Appellate Br. at 20, 29.) Thus,

Smitherman and Bauer admit that it was Midland's overall collection efforts, and not the receipt of the benign Response Letters they barely read that caused their dubious emotional distress.

Thus, the District Court's orders dismissing Smitherman and Bauer's cases for lack of Article III standing should be affirmed on this alternative basis.

## III.   The District Court Correctly Determined, In The Alternative, That Smitherman And Bauer Failed To Establish A Violation Of 15 U.S.C. § 1692c(c)

Next, the District Court determined that even if Smitherman and Bauer had standing to bring their claims, the claims fail because the Response Letters did not violate the FDCPA. (App. 233, S.R.Doc. 33 at 7, Add. 10; App. 432, B.R.Doc. 35 at 7, Add. 18.) The District Court recognized that Midland brought forward numerous arguments for why the Response Letters did not violate section 1692c(c), but only addressed one because the argument was dispositive. (*Id.*) That argument was that the Response Letters did not violate the FDCPA because Smitherman and Bauer waived any Section 1692c(c) claim by disputing the debts.

Citing numerous cases, the District Court determined that by including language disputing the debts in the February 15 Letters and April Letter, "Plaintiff[s] invited Defendant to confirm the amount owed," and that Smitherman and Bauer "cannot claim this invasion was unwarranted simply by including contradictory language that the letter was not a request for validation." (App. 234, S.R.Doc. 33 at

8, Add. 11; App. 433, B.R.Doc. 35 at 8, Add. 20.)  Furthermore, the District Court determined that Midland responded narrowly concerning the disputed amount owed and indicated that it would no longer contact Smitherman and Bauer as requested, nor did it.  (*Id.*)

Smitherman and Bauer challenge the District Court's alternative holding, first because they assert that the District Court did not have jurisdiction to issue the opinions, due to dismissing the case for lack of Article III standing.  Second, they challenge the decision because they assert that the cases the District Court relied upon are distinguishable.  Both of their arguments should be rejected.

A.    **The District Court's Issuance of An Alternative Decision Was Appropriate**

Regarding the District Court's jurisdiction, of course, "[c]ourts routinely make alternative decisions on the merits while simultaneously holding that a plaintiff lacks standing to sue." *Wind River Multiple Use Advocs. v. Espy*, 85 F.3d 641, 641 n.2 (10th Cir. 1996) (unpublished) (citing, *e.g.*, *Sierra Club v. Robertson*, 28 F.3d 753 (8th Cir. 1994) (holding that appellant lacked standing to challenge forest plan but affirming, in the alternative, district court decision on merits) and *Idaho Conservation League v. Mumma*, 956 F.2d 1508 (9th Cir. 1992) (reversing district court finding that plaintiff lacked standing but affirming alternative decision on merits)).  The Tenth Circuit in *Wind River* held that "[t]his practice is in the best interest of judicial economy and does not violate the case and controversy

requirement of Article III of the United States Constitution." *Wind River*, 85 F.3d at 641 n.2.

In fact, this Court in *Sierra Club*, "in the alternative, and for the sake of completeness and efficiency," addressed the merits of the district court's grant of summary judgment after determining that the appellants lacked standing. *Sierra Club*, 28 F.3d at 760. Thus, the District Court's consideration and issuance of the alternative decision was appropriate.

**B.**     **The District Court's Alternative Decision That Smitherman And Bauer Failed To Establish A Section 1692c(c) Violation Was Correct**

As to whether the District Court correctly determined that Smitherman and Bauer failed to establish a violation of Section 1692c(c), it did. The District Court correctly determined that Smitherman and Bauer waived their Section 1692(c) claim.

Moreover, the District Court's decision granting summary judgment for Midland was proper because the Response Letters were not an attempt to collect the debts and, thus, did not fall within the scope of Section 1692c(c). Furthermore, the District Court's holding should be affirmed because even if the Court determines that Section 1692c(c) is applicable to the Response Letters, the Response Letters fall within an exception to Section 1692c(c).

**1. The District Court Properly Determined That Smitherman And Bauer Waived Their Section 1692c(c) Claims**

As set forth above, the District Court, discussing this Court's opinion in *Scheffler v. Gurstel Chargo, P.A.*, 902 F.3d 757 (8th Cir. 2018), determined that Smitherman and Bauer waived their Section 1692c(c) claims by including language in the February 15 Letters and the April Letter disputing the debts. (App. 234, S.R.Doc. 33 at 8, Add. 11; App. 433, B.R.Doc. 35 at 8, Add. 20.) Indeed, this Court in *Scheffler* determined that plaintiffs may waive a Section 1692c(c) claim by their conduct. *Scheffler*, 902 F.3d at 763.

Smitherman and Bauer do not challenge the proposition of law that a plaintiff may waive a Section 1692c(c) claim, but they dispute that waiver is applicable here because they assert that a dispute is not an invitation to confirm the amount owed. (Appellate Br. at 33-36.) To the contrary, courts have recognized that when a consumer disputes a debt, it may constitute a waiver for purposes of providing verification information, which is "a logical response." *Villa v. Sw. Credit Sys., L.P.*, No. 19-01701, 2021 WL 11617656, at *4 (W.D.N.Y. Jan. 29, 2021), *report and recommendation adopted*, No. 19-1701, 2021 WL 1163199 (W.D.N.Y. Mar. 25, 2021); *cf. Duarte v. Midland Funding, LLC*, No. 17-5061, 2019 WL 978495, at *4 (N.D. Ill. Feb. 27, 2019) (concerning plaintiff's letter refusing to pay the debt and stating that the account was not accurate and holding that plaintiff waived her Section 1692c(c) claim).

The same claim was before the court in *Duarte* (i.e., that defendant violated Section 1692c(c) by sending plaintiff a letter after she sent defendant a letter stating she refused to pay the debt), and the court determined that even if defendant's letter qualified as a communication, plaintiff waived her claim. *Duarte,* 2019 WL 978495, *4.

Id. *4. The court reasoned that:

> Duarte's statement that she disputed the debt amounts to a waiver of her statement that she refused to pay the debt, at least with respect to the dispute she raised in the same letter. . . . And the MCM letter honored her requests, narrowly responding to the dispute while also indicating that, 'as requested by you, [MCM] will no longer be contacting you regarding this account by phone or mail unless it is to further respond to this dispute by you.'. . . MCM made no other contact with Duarte, and the letter itself did not exceed the scope of Duarte's waiver.

*Id.*

Smitherman and Bauer take issue with the opinion in *Duarte* because, first, the basis of the claim was a refusal to pay, not a demand to cease contact. (Appellate Br. at 45.) However, for purposes of a Section 1692c(c) claim, the distinction is one without a difference. Section 1692c(c) applies to "further" communications "with respect to such debt," where the consumer notifies the debt collector in writing that the consumer refuses to pay the debt **_or_** that the consumer wishes the debt collector to cease further communications. 15 U.S.C. § 1692c(c).

Second, Smitherman and Bauer suggest that *Duarte* is not good law because it is based on an overly broad reading of *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1169-70 (9th Cir. 2006). (Appellate Br. at 46-47.) However, the court's reasoning in *Duarte* is apt. The court in *Duarte*, quoting *Clark*, reiterated that Congress' intention for the FDCPA was to "protect consumers from 'improper conduct' and illegitimate collection practices 'without imposing unnecessary restrictions on ethical debt collectors.'" *Duarte*, 2019 WL 978495, at *4 (citing *Clark*, 460 F.3d at 1169-70). By finding that a dispute allowed the defendant to provide a narrow response only as to the dispute, Congress' intention is furthered. Thus, the District Court did not err by determining that the Response Letters did not violate Section 1692c(c) because Smitherman and Bauer waived their claims by disputing their debts.

## 2. The District Court's Decision Should Be Affirmed Because The Response Letters Did Not Trigger Section 1692c(c)

"The FDCPA does not apply to *every* communication between a debt collector and a debtor." *Aargon Agency, Inc. v. O'Laughlin*, 70 F.4th 1224, 1238 (9th Cir. 2023) (cleaned up) (quoting *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384 (7th Cir. 2010)); *see McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 914 (8th Cir. 2014) (stating that not every communication about a debt from a debt collector is in connection with the collection of any debt). The Eighth Circuit has held that when determining if a communication is in connection with the collection of a debt,

it employs the "animating purpose test." *Heinz v. Carrington Mortg. Servs., LLC*, 3 F.4th 1107, 1112 (8th Cir. 2021). Under this test, "for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." *Id.* (citation omitted).

Smitherman and Bauer assert that this test is inapplicable because Section 1692c(c), unlike other sections of the FDCPA, does not contain the "in connection with the collection of any debt" language. (Appellate Br. at 35.) However, the title of Section 1692c is "***Communication in connection with debt collection***." 15 U.S.C. § 1692c.

Regardless, courts have found that debt collectors' response letters acknowledging a cease communication request do not violate Section 1692c(c). *Lindley v. TRS Recovery Assocs., Inc.*, No. 12-109, 2012 WL 6201175, at *4 (S.D. Tex. Dec. 12, 2012); *Duarte*, 2019 WL 978495, at *2. In fact, *Duarte* involved what appears to be the same response letter, and the court granted defendant's motion for summary judgment, stating "the Court cannot find that the MCM letter amounted to a communication in connection with the collection of a debt." *Id.* at *3. The court reasoned that the letter did not include a demand for payment and that plaintiff invited the response by sending Midland her letter, *inter alia*. *Id.* The same facts are before the Court in this case.

Furthermore, in *Hennessey v. Medicredit, Inc.*, No. 18-217, 2018 WL 3546769, at *2 (E.D. Mo. July 24, 2018), the court likewise found that a letter defendant sent in response to a dispute was not sent to collect a debt in violation the FDCPA, including Section 1692c. The court reasoned that the defendant's response letter did not violate the FDCPA because the defendant's letter was sent after plaintiff sent a letter disputing the validity of the debt and the substance of the letter did not demand payment. *Hennessey*, 2018 WL 3546769, *4.

Like these cases, because the Response Letters were sent after Smitherman and Bauer's dispute and did not demand payment, the Court should determine that the Response Letters did not violate Section 1692c(c). And, thus, on this alternative basis, the District Court's orders should be affirmed.

## C. The District Court's Decisions Should Be Affirmed Because The Response Letters Fall Within An Exception To Section 1692c(c)

Section 1692c(c) contains three exceptions allowing communications with a debtor after a request to cease is sent. Section 1692c(c)(1) allows a debt collector to notify the consumer that "the debt collector's further efforts are being terminated." 15 U.S.C. § 1692c(c)(1). Here, the Response Letters advised that "we will no longer be contacting you regarding this account by phone or in writing unless required by law or you request that we resume communications." Thus, the Response Letters were permitted by Section 1692c(c)(1).

Moreover, the Response Letters also implicate the second exception: "to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor." 15 U.S.C. § 1692c(c)(2). On the first page of the Response Letters, Midland specifically states that "to further investigate your inquiry" additional documentation and an explanation of the dispute may be provided. As such, Midland was invoking its right to further investigate the disputes upon receipt of additional information. Such further investigations are ordinarily invoked by debt collectors. As such, the Court may determine that no violation occurred.

## CONCLUSION

For the reasons set forth above, Midland respectfully requests that this Court:

1. Affirm the District Court's orders granting dismissal of Smitherman and Bauer's Complaints for lack of Article III standing; and/or

2. Affirm the District Court's orders granting judgment for Midland on Smitherman and Bauer's 15 U.S.C. § 1692c(c) claims.

Respectfully submitted,

By: s/ Joshua C. Dickinson
Joshua C. Dickinson, MO Bar #51446
Shilee T. Mullin, MO Bar #52207
Attorneys for Appellee
Spencer Fane LLP
13815 FNB Parkway, Suite 200
Omaha, NE 68154
Telephone: (402) 965-8600
E-mail: jdickinson@spencerfane.com
        smullin@spencerfane.com

## CERTIFICATE OF COMPLIANCE AND SERVICE

I hereby certify that:

1.     This brief complies with the type-volume limitation of FRAP 32(a)(7)(B) because this brief contains 12,711 words, excluding the parts of the brief exempted by FRAP 32(f).

2.     This brief complies with the typeface requirements of FRAP 32(a)(5) and the type style requirements of FRAP 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 in size 14 font, Times New Roman type style.

3.     This brief complies with 8th Cir. R. 28A(h) because it has been scanned for viruses, is virus-free, and is filed in searchable, Portable Document Format.

4.     On this 4th day of February, 2025, this brief was filed electronically with the Clerk of the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system.

s/ Joshua C. Dickinson
Attorney for Appellee
February 4, 2025